226 So.2d 502

**PRINGLE–ASSOCIATED MORTGAGE CORPORATION**

**v.**

**Ernest R. EANES, Jr., et al.**

**Nos. 49234, 49249, 49262.**

Feb. 24, 1969.

On Rehearing June 27, 1969.

Rehearing Denied Oct. 8, 1969.

Doris Gates Rankin, George S. Womack, W. S. McKenzie, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for J. R. McFarland, d/b/a United Masonry Company, Livingston Roofing & Sheet Metal Company, Inc., and Capitol Detective Agency, Inc., defendants-in rule-appellees.

M. Truman Woodward, Jr., New Orleans, Victor A. Sachse, Frank P. Simoneaux, Taylor, of Dale, Owen, Richardson, Taylor & Mathews, Baton Rouge, for Pringle-Associated Mortgage Corporation and Ross E. Cox, plaintiffs-appellees.

McCALEB, Justice.

The primary issue presented in these consolidated writs of review is whether a subcontractor who pays his own employees for labor performed on a building project as their wages become due is legally subrogated under Article 2161(1) and (3) of the Civil Code to the superior privilege granted such laborers by R.S. 9:4801(D) and R.S. 9:4812.

The record reveals the following undisputed facts: Prior to July 1965 Ernest R. Eanes, Jr., the original defendant in the case, purchased Lot A, Plantation Trace Subdivision in East Baton Rouge Parish, for the purpose of subdividing the property and constructing apartment buildings thereon. In order to secure funds for the construction work, Eanes executed a promissory note in the sum of $335,000 in favor of plaintiff mortgage corporation, the payment of which was secured by a collateral mortgage affecting the land upon which the development project was to be erected. Eanes also entered into an agreement (the record does not show whether this was a written or an oral contract) with Buddy Eanes Homebuilders, Incorporated, of which he was president, to construct certain apartments or other buildings on the mortgaged property. Pursuant to this agreement, Buddy Eanes Homebuilders let various subcontracts to other firms to supply the labor and material necessary to perform the desired construction. Although considerable work and effort was devoted to the project, it was never completed as Buddy Eanes Homebuilders defaulted as prime contractor. At the time of the default, plaintiff corporation had advanced Eanes on account of the project the sum of $263,615.70.

On April 20, 1966 plaintiff sued Eanes in this proceeding on his promissory note and was awarded judgment for the amount then due. A writ of fieri facias was issued under which the property subject to the collateral mortgage was seized and sold and, on June 8, 1966, plaintiff purchased the property at the sheriff's sale. This sale was made subject to various liens and privileges which had been previously recorded.

Shortly after its acquisition, plaintiff filed a rule in this proceeding against the

various lien holders to show cause why their liens should not be cancelled. Although many liens had been recorded against the property, the trial court held that only three (those here involved) primed the collateral mortgage held by plaintiff, viz., Livingston Roofing & Sheet Metal Company, Inc., in the sum of $2,-961.74, representing wages paid by it for labor; J. R. McFarland, d/b/a United Masonry Company, in the sum of $5,606.86, representing wages paid to his employees ($3,214.24) and also wages in the sum of $2,396.62 for labor personally performed by McFarland, as subcontractor of the masonry work involved; and Capitol Detective Agency, Inc. for $1,446.26, representing salaries paid two night watchmen who were assigned to protect the project during its construction.

Plaintiff appealed from the adverse decision to the Court of Appeal, First Circuit, where the judgment was reversed, the Court holding that the privilege of plaintiff, as mortgagee, was superior in rank and entitled to payment with preference and priority over all liens filed by the three subcontractors, except the lien for labor personally performed by J. R. McFarland in the sum of $2,396.62. See 208 So.2d 346. Thereafter, McFarland, Livingston Roofing & Sheet Metal Company, Inc. and Capitol Detective Agency, Inc. applied for certiorari. The applications were granted

and the case has been argued and submitted for our decision.

Liens were timely filed by the subcontractors herein, and it is conceded that no lien was filed by any laborer, except McFarland for work personally performed by him. The three subcontractors are claiming the privilege of their laborers (which primes even the privilege of the holder of a prior mortgage) on the ground that, under Article 2161(1) and (3) of the Civil Code, they became legally subrogated to the rights of their respective laborers when they paid their wages. They cite, as controlling, our 1932 decision in Tilly v. Bauman, 174 La. 71, 139 So. 762, where it was held that subcontractors who have paid their laborers become legally subrogated to the laborers' liens where, as here, the prime contractor has defaulted on a building contract which has not been timely recorded.

Counsel for plaintiff concede, as they must, that this case is indistinguishable from Tilly v. Bauman. However, they assail the ruling in Tilly v. Bauman as unsound, proclaiming that the Court misinterpreted the meaning of Article 2161(1) and (3) of our Code. To buttress this postulation they rely on a diverse view expounded by the commentator Planiol (see 2 Planiol Civil Law Treatise, as translated by the Louisiana Law Institute, Nos. 477, 491, 499 and 501) in his interpretation of

Article 1251 of the Code Napoleon of 1804 [1] from which Article 2161 of our Code is derived, and also upon the expression of an alleged contrary construction of Article 2161(1) in the 1891 decision of New Orleans National Bank v. Eagle Cotton Warehouse & Compress Co., 43 La. Ann. 814, 9 So. 442.

The Court of Appeal subscribed to the arguments of plaintiff's counsel and refused to follow the decision in Tilly v. Bauman, declaring it to be in conflict with Planiol's translation of the comparable article of the Code Napoleon and also with certain statements appearing in the opinion in New Orleans National Bank v. Eagle Cotton Warehouse & Compress Co. The Court of Appeal stated:

"Readily acknowledging our duty and obligation to follow and apply the decisions of the Supreme Court *when its rulings are clear and unambiguous,* we also are under the obligation of pointing out those instances wherein we find conflicting views expressed by our superiors. Where such conflict exists, we are disposed to follow the view which appears to us most sound. We do so in order that such conflicts may be resolved by a reconsideration of the issues by the Supreme Court to the end that all resulting uncertainties may be resolved and removed." (Italics ours) See 208 So.2d at p. 348.

We think it illusory for the Court of Appeal to suggest that our rulings on the subject under consideration are vague and ambiguous for, admittedly, Tilly v. Bauman (our only, hence last, expression) is on all fours with the case at bar. Indeed, the above quoted statement manifests that the appellate court is laboring under a misconception as to its duty to follow the jurisprudence of this Court. Should any appellate court find our jurisprudence equivocal, it is nevertheless obligated to reach a result concordant with the last expression of this Court on the subject matter.

A reading of the concise opinion in Tilly v. Bauman with reference to legal subrogation discloses that the Court, in holding paragraphs (1) and (3) of Article 2161 of the Civil Code governed the case, simply determined that the literal reading of each paragraph of the codal article

1. In a supplemental brief to this Court, plaintiff's counsel have referred us to the view of the commentators Aubry & Rau to the effect that, under Article 1251(1) of the French Code, a creditor claiming subrogation must necessarily be a third person and cannot also be a debtor of the preferred privileged creditor. 1 Aubry & Rau, Civil Law Translations— Obligations (an English translation by the Louisiana Law Institute), Sec. 321. However, it is to be noted that this Court has declared that the views of the French commentators on the subject of legal subrogation are not in harmony— See Ziegler v. His Creditors, on Rehearing, 49 La.Ann. 187, 21 So. 666 (1897).

was applicable to the facts. The Court stated:

"These two claims involve exactly the same point of law, which is this, Is a subcontractor who pays off his laborers employed by him subrogated to the lien rights of such laborers? We think he is. Under the statute, the building (and therefore, in effect the owner of the building) is liable for the workmen's wages, because they have a lien on it; the subcontractor is of course liable for these wages, because he employed the men. Again, since the laborer's lien primes the mortgage and the subcontractor's does not, the laborer's lien is necessarily preferable to that of the subcontractor.

"*We have therefore before us both cases provided for by the Civil Code,* art. 2161, R.C.C. which provides as follows:

" 'Subrogation takes place at right:

" '1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.

\*    \*    \*    \*    \*    \*

" '3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.' " (Italics ours)

It is thus seen, as indicated above, the Court was of the opinion that considered in either aspect, as a creditor of the owner or as a solidary debtor with the owner for the laborer's wages, the subcontractor by paying the laborer's wages satisfied the requirements of both paragraphs (1) and (3) of Article 2161. The legal subrogation provided in paragraph (1) of the codal article was found to be applicable because the subcontractor, who had not been paid for work performed under the Statute (now R.S. 9:4812), was a creditor of the owner as well as the laborers, who became the highest ranking privileged creditors of the owner as soon as they performed work on the property. This construction seems justifiable because the language of paragraph (1) is explicit and free from ambiguity and, hence, under Article 13 of the Civil Code, its letter may not be disregarded "under the pretext of pursuing its spirit."[2]

The interpretation given by Planiol and also the dictum in the case of New Orleans National Bank v. Eagle Cotton Warehouse & Compress Co.,[3] upon which the Court of Appeal relied, is to the effect that this

2. Since the Courts of France are not bound by the same rules pertaining to the application and construction of laws, as those provided by Chapter 4 of the Preliminary Title of our Civil Code, Arts. 13-21, the interpretation of Planiol, or other French commentators as to the meaning to be given an explicit provision while ordinarily persuasive is not controlling.

3. Incidentally, this case is plainly without application to the situation here because

subrogation takes place only when the junior creditor is a third person and is not a debtor of the preferred creditor, as in the case here. But evidently the Court in the Tilly case did not believe that such an interpretation was permissible because the language employed in Article 2161(1) does not limit the right of subrogation granted the subordinate creditor, who pays the preferred creditor, to instances in which such creditor is not indebted to the preferred creditor.[4] Therefore, to restrict the operation of the article so as to exclude such inferior creditors, would require the Court to perform a legislative function by amending the language used in the paragraph to read that subrogation takes place of right for the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his, *provided he is not also indebted to such creditor.*

However, even were we willing to concede that this Court in the Tilly case may have erred in concluding that paragraph (1) of Article 2161 was applicable under the circumstances presented here, the

result would nevertheless be the same. For we do not entertain the slightest doubt as to the soundness of the Court's pronouncement that paragraph (3) of the article governs the issue herein. This is because the subcontractors and the owner of the property were solidarily liable to the laborers performing work on the job for payment of those laborers' wages.

The Court of Appeal reasoned that the subcontractors were not solidarily liable with the owner for laborers' wages because, at the time the wages were paid, the subcontractors " * * * were the sole debtors and prime obligors of the laborers concerned." The court stated " * * * the mere earning of wages by performing work on a given project does not per se vest the laborer with a claim or right against the property and its owner", theorizing that this right only springs into existence against the project and its owner when a notice is given " * * * through the medium of a lien filed in compliance with the pertinent statute."

Lallande, who made the payment, was never at any time a creditor of Horine. He was simply a principal debtor. Here, the subcontractors were creditors of the owner and were entitled to their legal privilege on the building at the time they paid their laborers who had the highest preferred privilege on the property.

4. In Ziegler v. His Creditors, on Rehearing, 49 La.Ann. 187, 21 So. 666, the Court, after stating that there was some variance in the French authorities on

the question of legal subrogation and after citing the views of Boileux, Toullier, Marcadé and Dalloz Code Annotés, pertinently observed: "After all, on this question, is not the Code itself enough? Its conciseness of expression, that subrogation takes place in favor of the creditor who pays another whose debt is preferable by reason of his privilege or mortgage, would certainly seem to preclude any aid for interpretation."

It is apparent from the above quoted deductions that the Court of Appeal gave consideration only to that part of R.S. 9:4812 providing for the creation of privileges upon the building by persons who have performed services or labor upon the same, which constitute a claim in rem against the building and that it failed to notice that the statute also provides a *personal* right of action in those parties entitled to a privilege against the owner for the amount of their claim for a period of one year from the filing of the claim. Under this provision laborers, materialmen and other persons performing services in the construction of a building for a contractor or subcontractor are granted this personal right of action as soon as the services are performed and the owner, who has failed to require a performance bond from the prime contractor or to record the construction contract in the office of the Clerk of Court or Recorder of Mortgages within the time prescribed in the statute, becomes a debtor by operation of law.[5] The owner, of course, is not solely responsible since the contractor or subcontractor, who hires the laborers or materialmen, is contractually liable for their wages or for the price of the material furnished. Accordingly, in this case the owner and the subcontractors were solidary obligors for payment of the laborers' wages and, therefore, under paragraph (3) of Article 2161, the subcontractors, being bound with the owner for the payment of the laborers' wages, had an interest in discharging the debt and became subrogated of right to the claims of the laborers from the moment the latter were paid. See Alfred Hiller Co. v. Hotel Grunewald Co., 138 La. 305, 70 So. 234. This view is fully supported by the applicable articles of the Civil Code and the jurisprudence construing them.

Article 2091 defines an obligation in solido to be one in which all the debtors are obliged to the same thing, i. e., as applied here the payment of wages— "so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor." Article 2092 declares: "The obligation may be *in solido* although one of the debtors be obliged differently from the other to the payment of one and the same thing; * * *" and Article 2093 provides in essence that, although obligations in solido must be expressly stipulated, "This rule ceases to prevail only in cases where an obligation *in solido* takes place of right by virtue of some provisions of the law."

In Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295 (1950),

5. Article 1760 of the Code provides that, in relation to their origin, there are two kinds of civil obligations—viz., those created by operation of law and those arising from consent of the parties, called contracts.

we considered, from a procedural standpoint, the nature of the obligation owed to a furnisher of material by a defaulting contractor and the owner of a building. There, plaintiff had supplied on the order of the contractor, Falgout, building material which was used in the construction of the building situated in Plaquemines Parish owned by one Pelas. Suit was filed in Jefferson Parish against Falgout, a resident of that parish, and Pelas, a resident of Plaquemines Parish, for recovery of the price, as well as an in rem action directed against the building. Pelas excepted to the jurisdiction ratione personae and ratione materiae. This plea was maintained by the district judge. On appeal we sustained the ruling as to the action in rem but reversed the judgment upholding the exception to the jurisdiction ratione personae on the basis that Falgout and Pelas were obligors in solido. The Court stated in part:

" * * * According to the petition herein no contract between defendant Pelas (the owner) and defendant Falgout (the contractor to whom the materials were sold and delivered) was timely placed on the public records of Plaquemines Parish; and, as a result thereof and pursuant to the provisions of the Building Contract Statute, Section 12 of Act 298 of 1926, as amended by Act 323 of 1938, plaintiff has a personal right of action against such owner for the amount of its claim against Falgout. Moreover, Pelas and Falgout are personally liable in solido inasmuch as they are obliged to the same thing. Civil Code Article 2091; Hiller Co., Ltd. v. Hotel Grunewald Co., Ltd., 138 La. 305, 70 So. 234; Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So.2d 1; A. M. & J. C. Dupont, Inc. v. Boudreaux, La.App., 185 So. 317."

Tilly v. Bauman, which is and has been the jurisprudence of this State for over thirty-six years, is sustained by the cited case and the authorities cited therein; it is correct and the trial court properly held in conformity therewith that the subcontractors, who paid their laborers furnishing personal services on the construction project, are subrogated of right to the laborers' liens.

Disposal of the foregoing leaves for consideration two other questions: (1) whether or not the lien filed by Capitol Detective Agency, Inc. for $1,446.26, representing salaries paid two night watchmen who were assigned to protect the project during its construction, is entitled to be classified as a laborer's lien, which primes the rights of plaintiff as mortgagee of the property and (2) whether Livingston Roofing & Sheet Metal Co., Inc. has established with certainty that it is entitled to the $2,961.74 allowed by the trial judge as being attributable to labor costs it paid for construction work.

Insofar as the latter claim is concerned, we are of the opinion that the objection of plaintiff has merit. Livingston Roofing was a subcontractor on the job under a contract with Buddy Eanes Homebuilders, Inc. to furnish for $11,731.55 the labor and materials for the roofing and sheet metal work on the apartment project. Although it filed a lien claiming $6,252.76 for labor, the President of the company, Mr. Shafter Chenevert, testified that only $2,961.74 represented the amount paid by the corporation for labor performed in conjunction with the project. He further stated that, of this amount, $1,471.50 was paid to corporation employees for wages and the balance of $1,490.24 was paid to Victoria Roofing Company of Texas, whose laborers performed roofing work on the building.

Livingston Roofing's right of subrogation to the wage claims the laborers of Victoria Roofing Company may have had against the owner cannot be recognized for many reasons. However, it suffices to say that, aside from the fact that Livingston Roofing was not obligated to such laborers for their wages, the record does not show the portion of the $1,490.24 total which was paid for these laborer's wages and how much thereof represented indebtedness to Victoria Roofing Company for overhead, taxes, insurance and profit. Livingston Roofing carried the burden of proving any legal subrogation to which it might have been entitled with reasonable certainty. Its failure to do so requires that this portion of its claim be dismissed.

The same result obtains with respect to the subrogation claim by Livingston Roofing for $1,471.50 attributable to wages paid its own laborers. There is no evidence or showing made by this claimant as to the specific portion of the laborer's wages paid for work performed by them in Livingston Roofing's shop where certain items were fabricated for roofing on the apartment project, and how much in laborer's wages was actually paid for labor performed at the job site. As we have heretofore stated, the burden was on Livingston Roofing as claimant for subrogation to prove the amount of wages paid its laborers for work done at the construction site. Work performed away from the job site in fabricating material for use in the construction of a building does not entitle the laborers performing such work to the preferential privilege, which primes that of the mortgagee.

Respecting the right of Capitol Detective Agency, Inc., to subrogation for the wages paid two watchmen stationed at the apartment project while it was under construction, we think the law authorizes the allowance of this claim. The watchmen who protected the construction site from theft, vandalism, et cetera, are unquestionably laborers. This being so, they are entitled to a laborer's lien since they perform services at the job site which

are essential to and an integral part of the construction project.

For the reasons assigned the judgment of the Court of Appeal is reversed, insofar as it recognizes the mortgage of Pringle-Associated Mortgage Corporation to be superior in rank to the lien for labor filed herein by Capitol Detective Agency, Inc. in the amount of $1,446.26, and the judgment is amended insofar as it recognizes the lien of J. R. McFarland d/b/a United Masonry Company to be superior in rank to the mortgage of plaintiff, by increasing the amount of said lien to $5,606.86. In other respects the judgment is affirmed. All costs are to be paid by plaintiff.

FOURNET, C. J., concurs in the decree.

BARHAM, J., dissents and will assign written reasons.

BARHAM, Justice (dissenting).

The Court of Appeal, First Circuit, recognized that Tilly v. Bauman, 174 La. 71, 139 So. 762, a 1932 Supreme Court decision, was clear and unambiguous, the latest pronouncement of this court, and indistinguishable from and therefore applicable to the case at bar. It readily acknowledged its duty and obligation to follow and apply the decisions of the Louisiana Supreme Court. However, it just as readily refused to follow that Supreme Court pronouncement. Faced with this arrogation and usurpation, we should probably have remanded the case to that court immediately upon granting writs without assigning the matter for a hearing and with clear instructions to follow the existing law of this state. However, to remand after the case has been argued and submitted here would cause delay and do harm to the litigants before us, who are not responsible for the error.

While all Courts of Appeal and other courts are urged in their written opinions to assist this court in noting previous errors and correcting decisions erroneously rendered, they are nevertheless obligated by the Constitution and their oath to follow the law as enacted by the Legislature and pronounced by this court. I recognize and sympathize with the frustration of the Courts of Appeal when they are in disagreement with this court.[1] Although I

1. The late Judge George W. Hardy, Jr., presiding judge of the Court of Appeal, Second Circuit, once concluded an opinion where differences existed between the two levels of the judiciary with a paraphrase of the following quotation from Tennyson's "Charge of the Light Brigade":

"Theirs not to reason why,
"Theirs but to do and die".
For the Court of Appeal judges I would paraphrase:
"Theirs *but* to reason why,
"*And still* to do and die".
The Court of Appeal in this case could have followed the law and notwithstand-

take point with the Court of Appeal's failure to follow its readily admitted duty to apply Tilly v. Bauman, supra, I agree with that court's consideration and judgment that the former decision is erroneous.

This court should be cautious, vigilant, and prudent in overruling its prior pronouncements since those judgments are law and are entitled to be relied upon. However, when certain opinions are obviously erroneous, when they have not established a rule of property, and when in fact they stand alone and contrary to the general concepts of our law, it then becomes necessary for this court to weigh and evaluate the harm which may result from overruling because of prior reliance or other reasons, against the harm which will result from embracing and compounding previous error. After cautious and concerned consideration, I believe it is obligatory upon us to specifically overrule Tilly v. Bauman, supra, as being in error.

In this case certain subcontractors paid their laborers as the work progressed on construction under an unrecorded contract between the owner and a contractor, so this case does not concern unpaid laborers seeking to collect from the owner on recorded liens because of the contractor's or subcontractor's failure to pay.

ing preserved its integrity, its right to disagree, and its right to vent some of its frustration by calling our attention

The quotation from Tilly v. Bauman found in the majority opinion bears repeating here:

"These two claims involve exactly the same point of law, which is this, Is a subcontractor who pays off his laborers employed by him subrogated to the lien rights of such laborers?

"We think he is. Under the statute, the building (and therefore, in effect the owner of the building) is liable for the workmen's wages, because they have a lien on it; the subcontractor is of course liable for these wages, because he employed the men. Again, since the laborer's lien primes the mortgage and the subcontractor's does not, the laborer's lien is necessarily preferable to that of the subcontractor.

"We have therefore before us both cases provided for by the Civil Code, art. 2161 * * *."

Tilly v. Bauman held that a subcontractor by simply paying the laborers' wages as they accrued, although no laborer ever perfected a lien, met the requirements for legal subrogation under Civil Code Article 2161(1) and (3). It is readily admitted that the subcontractors here have no contractual right of subrogation, and that if any right of subrogation exists, it must be that *legal* subrogation provided for in these paragraphs.

to what it considered error in the former Supreme Court opinion.

The subrogation provided in Civil Code Article 2161(1), "For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages", is inapplicable because these laborers never had a privilege or mortgage. Recordation of the claim by "the said laborer" is necessary before any privilege comes into existence. Note the repeated and explicit requirements, and particularly the language of R.S. 9:4812[2] which reads: " * * * which *recordation* * * * by * * * the said laborer, shall *create* a *privilege* upon the building * * * in favor of any such person who shall have performed service or labor * * *. The said privilege, recorded as aforesaid, shall *constitute a privilege* against the property for a period of one year *from* the date of its filing, * * * and such right of action shall prescribe within one year from the date of the recordation of the privilege * * *. * * * Any person * * * performing any labor * * * shall have a personal right of action against the owner * * * for a period of one year *from the filing of his claim* * * *." And finally the statute provides: "The wages of a laborer for work done by him on any building, shall, *when* properly presented and *recorded by him* in accordance with the provisions of

this Sub-part, *create in his favor a privilege* on the land and improvements which will prime the right of mortgagees and vendors." (All emphasis supplied.)

It is obvious that the laborers employed by these subcontractors never had the *privileges or mortgages* required in Civil Code Article 2161(1), for the provisions of the law which create that privilege, R.S. 9:4812, have never been complied with. (See quotation immediately preceding.) There was no creditor with preferable claims " * * * by reason of his *privileges* * * *", from whom these subcontractors could purchase with right of subrogation under Civil Code Article 2161 (1).

The majority rejects the French authorities such as Planiol and Aubry and Rau by stating in footnote that the court in Ziegler v. His Creditors (on rehearing), 49 La.Ann. 144, 187, 21 So. 666, 684 (1897), found some variance in the French authorities on the question of legal subrogation. I find in Ziegler only the perception that the Code needs no clarification on this issue under the facts of that case.

Note the quotation by the majority from Ziegler: " * * * [The Code's] conciseness of expression that subrogation takes place in favor of the creditor who pays another whose debt is preferable by

2. Section 4812 of Title 9 of the Revised Statutes of 1950, and not the present version enacted in 1966, is applicable here

since this case arose prior to the effective date of the later act.

reason of his *privilege or mortgage,* would certainly seem to *preclude any aid for interpretation.*" Obviously Ziegler is·not supportive of the majority's interpretation or analysis of legal subrogation under Civil Code Article 2161(1) since that case was concerned with a prior recorded mortgage purchased by another creditor. We are not here concerned with the purchase of any preferable *privilege* or mortgage which would give rise to subrogation under Civil Code Article 2161(1), for the only one in existence here is the mortgage the subcontractors seek to prime.

The majority contends, and Tilly v. Bauman held, that the subrogation created by Article 2161(3), "For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it", is· applicable here, and that the subcontractors-employers and the owner were solidarily bound for the laborers-employees' wages. I contend that the owner with the unrecorded contract for "construction, improvement, repair, erection, or reconstruction" is not solidarily liable with any contractor, subcontractor, or other employer for their employees' wages simply because the employees are doing work on the owner's property and may exercise the privilege of R.S. 9:4812.

The majority takes point with the Court of Appeal's opinion, stating that that court's deductions were apparently based solely upon a consideration that R.S. 9:4812 created claims in rem, and that that court "* * * failed to notice that the statute also provides a personal right of action in those parties entitled to a privilege against the owner for the amount of their claim for a period of one year *from the filing of the claim*". Immediately following the majority concludes that laborers "* * * are granted this personal right of action as soon as the services are performed * *". It has ignored the language it used in the previous sentence, but more particularly it has ignored the specific language of R.S. 9:4812, which is stricti juris and is to be rigidly interpreted without extension or enlargement. La.Civ.Code Art. 3185; Citizens' Bank of Louisiana v. Maureau, 37 La.Ann. 857; American-La France & Foamite Industries v. Town of Winnfield, 184 La. 1043, 168 So. 293; Fruge v. Muffoletto, 242 La. 569, 137 So.2d 336; Lumber Products, Inc. v. Crochet, 244 La. 1060, 156 So.2d 438.

R.S. 9:4812 is explicit and unambiguous in limiting the personal obligation of the owner with the express words that there is "a personal right of action" against the owner only *"from* the filing" of the claim. The owner is not a debtor of the laborer unless a claim is properly and timely recorded by the laborer, nor is he a debtor if the claim is never filed. Since the required laborers' claims were never filed in this proceeding, no privilege was *created,*

and no personal obligation for wages ever existed. In fact, this owner was never a debtor of these laborers, and he therefore is not and never was solidarily liable with the subcontractors for their wages.

Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295 (1950), is cited by the majority as being supportive of the solidary liability of the owner and the subcontractors. The majority fails to note the distinguishing feature of that case, which is that a materialman had timely *recorded his claim,* and this court through Mr. Justice Hamiter simply held that the defendants (owner and subcontractor) were solidarily liable for the personal right of action flowing from plaintiff's *recorded privilege.* Rathborne lends no support to the majority's position.

R.S. 9:4801 denies specifically and expressly what the majority opinion would accomplish indirectly. That statute, after providing that recorded vendors' privileges and mortgages which meet certain conditions *are superior* to the claims of every contractor and subcontractor, provides in Subpart (D): "The privilege given to the laborer * * * primes the rights of mortgagees and vendors." Only laborers may perfect a claim superior to prior recorded mortgages, and contractors and subcontractors are expressly ranked below prior recorded mortgages. It is the legislative intent to protect certain recorded security devices from all but a laborer's claim, and its wisdom is not to be questioned in applying its enactments. The effect of Tilly v. Bauman and the majority opinion is to do indirectly what has been expressly prohibited, and enrich certain subcontractors for wages paid (upon which they intended to make a profit) to the detriment of the legislatively preferred mortgagee and perhaps many small materialmen, who must stay subordinated to the recorded mortgage.

The majority opinion fails to give meaning to the unambiguous language in the Civil Code, is contrary to the civilian concept of subrogation by law, disregards a long line of jurisprudence and the Code which make privileges stricti juris, and particularly repudiates and contravenes the direct legislative expressions of · R.S. 9:- 4801 and 4812. I am in total agreement with a statement quoted by the majority from Ziegler, supra: "After all, on this question, is not the Code itself enough? * * *"

I find that the Civil Code, our jurisprudence (except for Tilly v. Bauman), and our statutory law are explicit—so explicit that Tilly v. Bauman should be overruled as being erroneous, eddying alone and apart out of the mainstream of our law.

I respectfully dissent.

## ON REHEARING

SANDERS, Justice.

Because of the importance of this case, we granted a rehearing to reconsider the

following question: Is a subcontractor who pays wages to his employees as they become due for labor on a building project subrogated under Article 2161 of the Louisiana Civil Code to the superior privilege granted laborers by LSA-R.S. 9:4801 and LSA-R.S. 9:4812?

The facts are clearly and completely stated in our original opinion, and we condense them here: In 1965, Ernest R. Eanes, Jr. purchased a lot in East Baton Rouge Parish, for the purpose of subdividing the property and constructing apartment buildings. To secure funds for the construction, Eanes executed a promissory note for $335,000 in favor of plaintiff mortgage corporation, secured by a collateral mortgage affecting the land upon which the development project was to be erected. Eanes also entered into an agreement with Buddy Eanes Homebuilders, Incorporated, of which he was president, to construct apartments on the mortgaged property. Pursuant to this agreement, Buddy Eanes Homebuilders let various subcontracts to other firms to supply the labor and material necessary for construction. Although it did considerable work, Buddy Eanes Homebuilders defaulted as prime contractor. At the time of the default, plaintiff had advanced Eanes $263,-615.70 for the project.

On April 20, 1966 plaintiff sued Eanes in this proceeding on his promissory note and was awarded judgment for the amount then due. A writ of fieri facias issued under which the property subject to the collateral mortgage was seized and sold and, on June 8, 1966, plaintiff purchased the property at the sheriff's sale. This sale was made subject to certain previously recorded privileges.

Now competing with the mortgage holder, the claimants to these privileges are Livingston Roofing & Sheet Metal Company, Inc. for $2,961.74, representing wages paid by it for labor; J. R. McFarland, d/b/a United Masonry Company, for $5,606. 86, representing wages paid to his employees ($3,214.24) and wages of $2,396.62 for labor personally performed by McFarland, as subcontractor of the masonry work involved; and Capitol Detective Agency, Inc. for $1,446.26, representing salaries paid two night watchmen who were assigned to protect the project during its construction.

The parties concede that no laborer, except McFarland, filed a lien or privilege, but the subcontractors timely filed a claim for the privilege of their laborers.

The Court of Appeal, rejecting the subcontractors' right of subrogation under Article 2161, LSA-C.C., held plaintiff's mortgage primed all liens filed by the subcontractors, except the lien for labor personally performed by J. R. McFarland for $2,396.62. On original hearing, we upheld the subcontractors' right of subrogation under our decision in Tilly v. Bauman, 174 La. 71, 139 So. 762 (1932), and reversed the holding of the Court of Appeal.

Subrogation is an ancient concept, having its origin in Roman law. It was more fully developed and refined in France and became part of the Code Napoleon of 1804.[1] The Louisiana Civil Code Articles on this subject are almost identical to the corresponding articles of the French Civil Code. See Comment, 25 Tul.L.Rev. 358, 359.

As to legal subrogation, Article 2161 of the Louisiana Civil Code provides:

"Art. 2161. Subrogation takes place of right:

"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages. * * *

"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it."

■ The foregoing article enumerates exceptions to the general rule of Article 2134, that when a third person pays the debt of another, no subrogation takes place and the debt is extinguished. Under familiar principles of statutory construction, these exceptions should be strictly construed. Succession of Andrews, La.App., 153 So.2d 470, cert. denied 244 La. 1005, 156 So.2d 57; 50 Am.Jur., Statutes, § 431, pp. 451–452; 82 C.J.S. Statutes § 382, pp. 891–894.

Subparagraph 1 of Article 2161 declares that subrogation takes place "for the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages." ·

■ The subcontractors in the present case, of course, are creditors of the prime contractor, Buddy Eanes Homebuilders, and we can assume they are creditors of the owner. For subrogation to occur, however, the laborers must also be creditors of the owner at the time their wages are paid.

When this litigation arose, LSA-R.S. 9:4812 provided:

"The effect of the registry ceases, *even against the owner* of the property or the property itself, if the inscription has not been renewed within one year *from the date of the recordation.* Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, *shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim,* which right of action shall not prescribe within one year of the date of its recordation, or the reinscription thereof. This shall not interfere

---

1. Arts. 1249–1252.

with the personal liability of the owner for material sold to or services or labor performed for him or his authorized agent. The said privilege shall be superior to all other claims against the land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized homestead or building and loan association, if the vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. *The wages of a laborer for work done by him on any building, shall, when properly presented and recorded by him in accordance with the provisions of this Sub-part, create in his favor a privilege on the land and improvements which will prime the right of mortgagees or vendors.*" (Italics ours).

■■ Since the laborers had no contractual relation with the owner, they can be the owner's creditors only if they are accorded that status by the foregoing statute. The statute provides, however, that a laborer shall have a personal right of action against the owner "from the filing of his claim." Until the laborer files this claim, he never achieves the status of creditor. At best, he has only an inchoate right to become a creditor of the owner. Concededly, the laborers in the present case never filed an affidavit under the statute; their employers, the subcontractors, paid their wages as they became due. Hence, the laborers cannot be considered creditors of the owner to fulfil the conditions of subrogation.

■ Another equally valid principle bars application of the first Subparagraph of Article 2161. No subrogation takes place under this provision when the creditor and potential subrogee acquits a debt for which he is primarily liable.

In New Orleans Nat. Bank v. Eagle Cotton Warehouse & Compress Co., 43 La. Ann. 814, 9 So. 442, this Court recognized the principle:

"It is the essence of the legal subrogation which is defined in the foregoing paragraph that the person making payment should be a third person in respect to the obligee of the debt he is seeking to prime by making the payment, and also that such payor should himself be a creditor of inferior rank of the common debtor whose debt he pays.

"But Lallande was not only not a third person in respect to the obligee of the debt he sought to prime, but he was himself the original obligor, and more recently the plaintiff's pledgor."

The modern French authorities support this principle. See 2 Aubry and Rau, Obligations, § 321, pp. 187, 203 (English Translation by the Louisiana State Law Institute, 1965); 2 Planiol Civil Law

Treatise, No. 491, Footnote 27, p. 278 (English Translation by the Louisiana State Law Institute, 1959); 2 Baudry-Lacantinerie, Obligations, § 1560, pp. 670–671 (3d ed. 1907).

■ The basic theory of this type of subrogation is that payment must be made by another creditor for the benefit of the debtor. When such a payment is made, the debtor is not liberated. Instead, the credit paid is in effect transmitted to the paying creditor, who assumes the preferred status of the creditor who has been paid. A creditor who pays his own debt has done no more than he was obligated to do. He has given nothing for the benefit of the debtor. Hence, subrogation is normally disallowed.

To permit the subcontractors to invoke legal subrogation for the payment of their employees' wages would in effect award them a first ranking privilege for their own credit against the owner.

We conclude subrogation must be rejected under Subparagraph 1 of Article 2161.

■ The subcontractors maintain, however, they fulfil all requirements for subrogation under Subparagraph 3, declaring that subrogation takes place of right in favor of him, who "being bound with others" pays the debt that he had an interest in discharging.

Clearly this language presupposes the existence of a solidary obligation. If no soli-dary obligation exists, subrogation does not take place.

In denying subrogation under this clause, the Court of Appeal held:

"[T]he subcontractors and owners were not and indeed could not have been solidarily liable to the laborers whose claims are herein asserted. Under the circumstances herein the owner was never liable to the laborers as no liens were filed by any party occupying such status. Under the lien law, no liability arises on the part of the owner until the lien is recorded. Since the owner was never liable to the laborers, it necessarily follows he was not liable for such wages, solidarily or otherwise, with those primarily obligated for the wages earned.

"In the instant case when the subcontractors herein involved paid the wages for which they now claim subrogation, said subcontractors were the sole debtors and prime obligors of the laborers concerned."

■ After reconsideration, we conclude the Court of Appeal correctly disposed of this issue. It is now apparent we erred in holding the owner became a debtor of the laborers "as soon as the services are performed." As we have demonstrated, the personal liability of the owner comes into existence only when laborers file their claim. Since the owner was no debtor, there can be no solidary obligation.

In holding the owner a debtor of the laborers on original hearing, we relied upon Alfred Hiller Co. v. Hotel Grunewald Co., 138 La. 305, 70 So. 234, and Rathborne Lumber & Supply Co. v. Falgout, 218 La. 629, 50 So.2d 295. A reexamination of these cases discloses a lien affidavit was filed in them as a basis for personal liability under the statute. Hence, they are inapposite.

■ We hold, as did the Court of Appeal, that subrogation is unavailable to the subcontractors for their wage payments.

Concededly, the 1932 decision of this Court in Tilly v. Bauman is in direct conflict with our present holding. That decision stands alone in the jurisprudence and has been criticized as a "strained" construction of the pertinent statutes. See Steeg and Meyer, "When is a Security Not A Secured Right?" 39 Tul.L.Rev. 513, 516. The decision is unsound and must yield to the legislative will embodied in the statutes and code articles.

The clash of economic interests in this litigation has not escaped our attention. When asserted under the present circumstances, a laborers' privilege protects no laborers. They receive their wages in full as they accrue. On the other hand, the construction lender may be deprived of reasonable security for money already advanced.

Our present holding converges with a salutary policy: the optimum protection of recorded mortgages from the intrusion of later claims, unrecorded when the funds are disbursed. Our holding safeguards the security of the recorded mortgage—a catalytic force in the state's economy.

For the reasons assigned, the judgment of the Court of Appeal is affirmed. The right of the unsuccessful litigants to apply for a rehearing is reserved.

McCALEB, J., dissents adhering to the view expressed in the original opinion.

BARHAM, J., concurs.