BARHAM, Justice
(dissenting).
The majority opinion takes so many contradictory alternative positions that it is impossible for me to understand what it holds. I believe all would agree that the interpretation of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), by our own court heretofore has left the trial courts in abysmal obscurity as to the constitutional requirements in accepting guilty pleas. While it appeared that our decision in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), had brushed aside that obscurity and had sharply clarified this court’s position as to the requirements of affirmative, intelligent waiver of several basic constitutional rights, the majority of this court has since vacillated, floundered, and shown expertise in retractility.
Some of the weaknesses of the majority opinion here are as follows:
The majority assumes that the court reporter is responsible for the minute record. I cannot absolve the judge from the responsibility that the minute entries accurately reflect the proceedings had in his court.
We are dealing with federal constitutional questions which are governed by the interpretations of the United States Supreme Court and the federal court system; yet the majority reaches only to state courts for support for its position, knowing full well that the vast majority of the federal decisions are to the contrary. Certainly it would seem that all legal minds would admit that the federal courts have the final right to adjudicate United States constitutional questions, and that their interpretations will prevail whether the result is palatable or not.
At the same time that the majority holds that a contemporaneous record which would support the constitutionality of the plea of guilty is not required under the jurisprudence of other states, it says categorically : “ * * * we hasten to add that a contemporaneous verbatim transcript of the plea proceeding is dictated by vital considerations relating to efficiency in the administration of criminal justice.” (Emphasis supplied.) I have never worried about the contemporaneous record to satisfy the Boykin requirements except for the protection of the courts, the State, the people, so that what is constitutionally accomplished may be legally protected. If Boykin demands this record, whatever we say will not countermand it.
*338 We do not necessarily reach the question of the contemporaneous record in this case because there has been an evidentiary hearing, and the post-plea evidentiary hearing establishes that this plea was taken without a knowing, voluntary waiver of the constitutional rights which the majority itself, in contradiction, later finds to be essential under Boykin. This is my major concern in dissent here and points up the other errors committed by the majority.
The majority writes at great length about the defendant’s knowing the consequences of his plea — i. e., how much time he was going to serve — , and yet that is not the primary question before us, nor was it the question resolved by Boykin.
Let us examine only the testimony of the judge who accepted the plea. First he testified that he had no particular or special knowledge of this plea because he could not remember it. Of course that is exactly why Boykin specified a contemporaneous record, and why I have urged it in dissent over and over,* so that the trial judge will not have to depend upon recall to establish the nature of the proceeding had. But when the trial judge here was asked what his “normal procedure” was, he stated: “The normal procedure is to explain to the accused prior to his withdrawal of a plea and entering of a plea of guilty Ms right to a trial, his right to appeal if he’s found guilty, and all consequences which he faces as a result of his plea of guilty.” (Emphasis supplied.)
Even if we assume that Boykin would allow a post-plea hearing to cure record deficiencies, certainly it will not allow testimony of the “normal procedure” to stand as an affirmative showing that a particular defendant voluntarily and knowingly waived his constitutional rights. That’s what Boykin is all about — i. e., “murky memories” cannot be used to affirmatively establish waiver of constitutional rights. Boykin requires an affirmative waiver, and the cases are legion both in federal jurisprudence and in our own which define an “affirmative” showing as actual, factual proof.
But for the purpose of pointing to the grave deficiency in this majority opinion, let us see what the “murky memory” of this trial judge supplied to cure the "silent record”. The most that we can get from his reference to “normal procedure” is that perhaps one constitutional right was offered to, and waived knowingly and voluntarily by, the defendant: the right to trial by jury. The trial judge does not pretend that he explained that a guilty plea was self-incriminating, and that a guilty plea foreclosed the possibility of confrontation *340 of accusers and witnesses. The process of taking the contemporaneous record and the post-plea record and of applying the greatest mental filtration to obtain the sinallest substances which would sustain a constitutional waiver gives us not the slightest residue.
■ Again, the majority moves to contradiction. Relying only upon state decisions which must yield to federal jurisprudence on federal constitutional issues, it tries to justify “the failure to articulate all three rights”. I need not dissect and analyze the cited cases and the concurring opinion in State v. Johnson, 260 La. 902, 257 So.2d 654, relied upon by the majority and the myriad uncited cases, for immediately after the majority applies this impossible rule to the case at hand, it states categorically that we will not relax the strict rule of State ex rel. Jackson v. Henderson, supra.
Now comes the most unfathomable legal principle in the opinion. The majority has decided to apply Boykin v. Alabama not upon its effective date, June 2, 1969, but as of December 8, 1971, when we handed down State ex rel. Jackson v. Henderson. Is it reasonable to believe that a state court can ignore and deny effect to a United States Supreme Court pronouncement until it finds it convenient or expedient to apply it to federal issues which are affected by the decision? I cannot believe that this has ever occurred before in this country. We, sitting as the Supreme Court of Louisiana, attack with harsh and condemning language our state appellate courts below us for daring to deviate from, or even to question, our jurisprudence (see Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502, and Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216). Yet we, who under our oath must obey the supremacy clause of the United States Constitution and respond to the United States Supreme Court decisions, tell that court of final supremacy that we will act on federal issues as we see fit — its pronouncements to the contrary notwithstanding.
Let me caution the trial courts and the district attorneys as well once again that regardless of what we of this court say and do, the Fifth Circuit Court of Appeals through its control of the various federal courts in this state will finally decide these issues. Since more than 90 per cent of all criminal convictions are based upon pleas of guilty, your cognizance of the federal court pronouncements will assist you in making certain that the pleas you accept and the convictions under them are not vulnerable to post-conviction attack.
I respectfully dissent.

 See, for instance, State ex rel. Martin v. Henderson, 259 La. 707, 252 So.2d 437; State ex rel. Bakke v. Henderson, 280 La. 592, 256 So.2d 63a