A. Morgan Brian, Jr., New Orleans, La., for plaintiff.

Alonzo T. Stanga, III, Metairie, La., for defendant.

ALVIN B. RUBIN, District Judge:

The issue here is whether a firm that supplies only labor services for construction work is protected by Louisiana's Private Works Act. The issue must be resolved under Louisiana law, and Louisiana's courts have never directly considered it. On principle, the Louisiana statute appears to recognize the claim, and judgment is therefore rendered in favor of the service supplier.

Olsten of New Orleans, Inc. ("Olsten") supplied labor services to a contractor, U.S. Service Corporation. When the contractor defaulted, its surety, American Fidelity Fire Insurance Company ("American") filed an interpleader action based on Louisiana's Private Works Act.

One of the purposes of the Louisiana Private Works Act[1] was to provide protection for individual laborers, subcontractors and a variety of other contributors to con-

**AMERICAN FIDELITY FIRE INSURANCE CO.**

v.

**U. S. SERVICE CORPORATION et al.**

Civ. A. No. 74-3348.

United States District Court, E. D. Louisiana.

April 13, 1977.

---

1. LSA R.S. 9:4801, et seq.

struction projects when the prime contractor of the construction project fails to pay them by granting them privileges on the property being improved. The Act permits the owner of the project to protect his property from being encumbered by requiring the contractor to furnish a bond.[2] If the primary contractor is then unable to pay subcontractors and other contributors to the construction project, they may recover against the surety[3] or, if no bond was furnished, they have a privilege on the construction project.[4] In this case American was the surety for U.S. Service Corporation, and the claim is brought against it based on its bond.

In essence, American contends that, while the Louisiana legislature intended to include a great variety of workers within the protective ambit of the Private Works Act, it excluded labor service contractors. But none of the statutory provisions claimed as support for this position upholds it. Indeed, the statute evidences an intention to embrace a firm that supplies labor for a project both as a "contractor" and as a "furnisher of labor."[5]

LSA R.S. 9:4803 provides that the surety shall be "liable in solido with the contractor for all labor and materials used in the said work of improvements." The scope of Section 4803 must be determined by reference to Section 4801. That section provides a privilege for every "contractor, subcontractor, . . . workman, laborer or furnisher of material . . . who performs work . . ." on the project. The contractor or subcontractor who provides labor alone would have a privilege under the literal language of Section 4801. If the bond procedure is followed, then the bond stands in place of the privilege and the surety becomes liable for "all labor . . . used" on the job whether it was supplied directly by the laborer or indirectly by a labor supply contractor.

Obviously, this does not mean that the surety is liable for all contractual obligations of the contractor. The surety is not liable in solido with the contractor for its conventional debt to a subcontractor who provided work primarily away from the jobsite and not directly concerned with construction. *Continental Casualty Co. v. Associated Pipe and Supply*, D.C.1970, 310 F.Supp. 1207.

However, Section 4803, read in tandem with Section 4801, makes the surety liable for "all labor . . . used" without restricting its liability to cases where the claimant is not the laborer who did the work. Section 4803 further states that the surety is "bound to the same extent as the said contractor" but this does not limit its liability; it makes the surety, American, as fully liable as U.S. Service Corporation would have been, for the surety is liable "in solido with the contractor." The Act itself contains no definitions, but there is no reason why one who contracts for the provision of labor should not be considered a subcontractor, under Section 4801. Therefore, even if Olsten is viewed as a subcontractor, it is protected by the Act.

LSA R.S. 9:4806, which is applicable in terms only to the situation where no bond is furnished, further indicates the scope of the Act for it extends protection to "sub-contractors, . . . workmen, laborers . . . *or any other persons furnishing labor,* skill, or material . . ." (emphasis supplied.)

---

2. The purpose of the Act is "not only to protect owners when they comply with the provisions of the act with respect to recordation of a written contract and bond, but also to protect those who furnish the services, labor or materials for the construction when the owner fails to comply with the mandates of the law for his own protection." *Express Ready-Mix, Inc. v. Evans,* La.App., 2d Cir. 1972, 266 So.2d 257.

3. Section 4803 of the Act provides for liability in solido for the surety and the contractor.

4. Section 4801 of the Act creates a privilege in favor of contractors and various categories of other workers on the land and construction project.

5. Olsten was not, of course, a "workman" or "laborer." The court need not reach the question of whether Olsten was a "subcontractor" since this decision is founded on Olsten's status as a "furnisher of labor" or a "contractor."

While the exact phrasing of Section 4806 differs from the words used in Section 4801, it is evident that the legislature intended by the entire act to afford protection to the same claims. The same persons who would have a privilege against the owner (Section 4801) have a claim against the surety if a bond is provided (Section 4803), and can enforce personal liability against the owner if no bond, or an inadequate one, is provided (Section 4806).

American contends that Olsten was not a "person . . . furnishing labor" as meant by Section 4806 because labor is furnished only by those who actually work. This is a reprise of the argument already considered in the discussion of Section 4803. There is no more reason to read the statute in this fashion than to give it another equally literal interpretation: a person furnishes labor if he himself works or if he furnishes those who work. Labor is a generic term embracing all who work. This interpretation is supported by the decisions holding that a contractor may recover under the statute for wages paid to its laborers. *City Bank & Trust Co. v. Caneco Construction, Inc.,* La.App., 1976, 341 So.2d 1331.

There is no more reason to read restrictively LSA R.S. 9:4807 (which relates to the owner's claims against the surety of amounts paid to satisfy the claims of "all those who have . . . furnished services . . .."). Section 4807 neither says nor appears to mean that it applies only to those who furnish *their own* services. Section 4814C relates to the procedure for making claims against the surety. It requires notice of the name of the parties "for whom the labor or service was done or performed." But this does not restrict the kind of claimant who is protected to one who personally performed the labor.

The policy of the Act appears to be to protect all those whose services or materials contribute to the construction project.

. . . [T]his statutory privilege . . indicates a special public policy in favor of those persons involved in construction works. This policy encourages the erec-tion of buildings, . . . Contractors, laborers, and materialmen who are given a security for the payment of their claims are more willing to render their services.

Comment, Laborers' and Materialmen's Privileges Under Louisiana Building Law, 44 Tulane Law Review, 326 at 327 (1970). There is neither any reason in principle not any statutory mandate that would exclude labor service contractors from the statute's protection. Labor service contractors serve an important function in construction works. Their contribution should be protected by the same statute that protects materials contractors and contractors who supply labor and materials together. The principle that lien statutes are to be read narrowly and that they are to be construed *stricti juris* do not mean that their scope should be delineated by hairlines.

In an analogous case, brought under the Louisiana Oil Well Lien Statute, LSA R.S. 9:4861, et seq., the Fifth Circuit held:

This lien is not limited strictly to the individual who performs the work, but may be asserted by a company who provides the workers. Prior statutes granted the lien to 'any person, firm, corporation, or association.' The phrase was shortened to 'any person' by the codification in 1940, apparently with no change in meaning intended.

We can find no reason for limiting the lien granted to 'any person who performs any labor or service' in connection with the drilling or operation of any well to the individual who actually does the work.

*Continental Casualty Co. v. Associated Pipe & Supply Co.,* 1971, 447 F.2d 1041, at 1056.

Finally, it is not decisive that a subcontractor who pays his laborers their wages when due is not subrogated by operation of law to the laborers' privilege. *Pringle Associated Mortgage Corp. v. Eanes,* La.App., 1 Cir. 1968, 208 So.2d 346, aff'd, 254 La. 705, 226 So.2d 502. That case involved merely the priority granted to laborers, and it held that a materialman's claim, which included both materials and labor, did not enjoy the priority over mortgages granted for labor-

ers' claims, even to the extent of the payment made by the materialman for these services. The case did not consider the question whether the materialman is entitled to a privilege for his entire claim, including sums paid for labor, but nothing contained in it alters the well established and statutorily clear principle that it does.

Since there is no basis in the Louisiana cases, in the wording of the statute, or in the policy of the statute, to deny coverage, judgment will be entered in favor of Olsten.