MILLER, Judge.
Plaintiff William Wooten appeals the judgment of the trial court rejecting his demand in tort against defendant State Farm Mutual Automobile Insurance Company, the liability insurer of defendant Howard V. Wimberly, Sr. We find that the trial court properly absolved defendant of liability on the ground its assured was free of negligence proximately causing the accident.
William Wooten sued for damages for injuries suffered by his six and one-half year old son who was seriously injured on May 7, 1965. The case was not submitted to the trial court for decision until July 30, 1969. The trial court assigned written reasons carefully reviewing the evidence. Appellant contends that there are fifteen erroneous findings in the opinion. Most have to do with factual determinations or conclusions based thereon. Additionally, plaintiff appellant cites nu *683 merous cases allegedly more in point than the child-darting cases cited by defendant.
The issue considered by the trial court, and we believe it to be the central issue here, is: Should the defendant driver have seen the Wooten child on the bicycle in time to take additional precautions, such as reducing his speed, sounding his horn or exercising more control over the automobile with a view to avoiding the accident? More particularly, should Wimberly have seen the Wooten boy on his bicycle before the oncoming stationwagon blocked his view of the cyclist, and recognized that extra precautions should be taken because of the possibility that this immature child might veer into his path through youthful indiscretion.
The accident occurred at about 4 p. m. on a clear day on Prien Lake Road in Calcasieu Parish, outside the city limits of Lake Charles, in what may be described as a slightly rolling wooded area. There are a few homes in the area. The road is blacktopped to a width of 18 feet with narrow shoulders and four foot deep ditches. The posted speed limit is 60 miles per hour. In the vicinity of the accident, the road runs east and west. The collision took place approximately 100 feet west of a small bayou that crosses the highway from north to south. Elevation at the site of the collision is approximately 12 feet below the crest of a small hill located some 340 feet to the west. Prien Terre Road (a shell surfaced road) makes a “T” intersection to the south, and is located about 120 feet east of the crest of the hill, and about 220 feet west of the point of impact. The Wooten home is approximately 250 feet north of the area where the accident occurred.
Although his mother thought that young Wooten was picking blackberries in their front yard, he was seen by one of plaintiff’s witnesses about five or ten minutes before the accident riding a bicycle up and down Prien Lake Road. While young Wooten was riding in a westerly direction on the north portion of the blacktop, the witness Mrs. E. C. Hunt, Jr. overtook him while driving west in her family Oldsmobile stationwagon at a speed between 35 and 45 miles per hour. The Wimberly automobile was approaching from the west traveling from 35 to 40 miles per hour. Mrs. Hunt drove either partially[1] or entirely into the passing lane to pass the bicycle but did not slow her vehicle. As she reached a point where the boy was to her right and “right at the back of my car” she for the first time saw the oncoming (Wimberly) car. She accelerated to a speed of from 40 to 50 miles per hour (Tr. 358) and quickly returned entirely to her own westbound lane of traffic, where the two vehicles passed one another. When she looked in her rear view mirror (at a distance she estimated at about 250 feet west of the place where she passed the bicycle), she saw that the Wimberly car had stopped on the blacktop and both front doors were open and Wimberly and his passenger were getting out of the Ford. She turned around in a nearby driveway and returned to the scene of the accident.
Although Mrs. Hunt made it clear that she was unable to estimate how far away the eastbound Wimberly Ford was when she first saw it (Tr. 360), she attempted to reconstruct the positions by placing rectangles on a plat of survey prepared for trial purposes. Exhibit P-1 Hunt would indicate that she first saw the Wimberly Ford when it was only 180 feet west of her and that the two vehicles passed when they were only 70 feet from the point of impact.
*684 When Mrs. Hunt passed the bicycle, young Wooten was on the blacktop heading in a straight westerly direction near the north edge of the road and gave no indication that he was going to turn and go across the road. Tr. 361.
Howard Wimberly, Jr. and his passenger Michael Helman, both testified that they were watching the road ahead; that they did not see the cyclist until Mrs. Hunt’s stationwagon was about thirty-five feet from them; that the stationwagon had not occupied their eastbound lane, but had only moved slightly, if any, into their lane; and that when the cyclist came from behind the stationwagon, he was heading into Wimberly’s lane and Wimberly immediately “stomped” his brakes and skidded to a stop, striking the boy some three feet before coming to a complete stop. Wimberly immediately checked the boy’s condition and Helman went to a nearby home to call an ambulance.
Defendant’s 1964 Ford Falcon skidded about 90 feet before striking the boy. All of the skid marks were in the Ford’s proper lane of traffic. Impact on the front of the Ford was approximately one foot left of the right headlight, and the Ford came to rest about three feet from the point of impact.
Wimberly, at 40 mph (59 feet per second) and Hunt, at 50 mph (74 feet per second), were closing the distance between them at the rate of 133 feet per second. It is easy to understand why the witnesses cannot be precise as to their relative positions. The evidence indicates that Wimberly was some 180 feet from the point of impact when he first saw the bicycle headed across the road into his lane from a position behind the oncoming stationwagon. We agree with the trial court’s finding that Wimberly timely reacted to this emergency.
Before the Hunt stationwagon blocked Wimberly’s view of the bicycle, should he have seen the cyclist and recognized that this was an immature child who might suddenly depart from his normal westbound position to dart across into Wimberly’s lane of traffic? We think not.
While the trial court was impressed with the argument that the hill to the west of the site of the accident, prevented Wimberly from seeing the Hunt vehicle at the time Mrs. Hunt passed the bicycle, we are impressed with plaintiff’s photographic and survey exhibits showing that this is most unlikely. But these same photographs of the area show that as Wimberly approached the scene of this accident, he could not focus his entire attention to a situation developing a long distance ahead of him. On the contrary, he was required to keep a lookout for situations that might develop immediately ahead of him. His speed of 35 to 40 mph was reasonable under the circumstances.
We find that the two vehicles were closing at a rate of approximately 133 feet per second; that the stationwagon did completely hide the bicycle for some period of time; that Mrs. Hunt thought it safe to pass the bicycle at a speed of 40 mph and accelerated while passing; that the bicycle was traveling normally in a westbound direction along the north edge of the blacktop when Mrs. Hunt quickly returned to her lane; that Wimberly did see the bicycle crossing behind Mrs. Hunt’s stationwagon when Wimberly was about 180 feet from the point of impact; and that Wimberly then timely reacted to the emergency.
If Wimberly should have seen the cyclist before Mrs. Hunt passed him, Wimberly is still free of negligence. The evidence shows that the bicycle was being properly ridden in a westerly direction on the north edge of the road when Mrs. Hunt quickly returned to her lane of traffic. Because of the distance that Wimberly was from the cyclist, Wimberly could not be held to the duty of determining that the cyclist was immature. There was nothing to suggest that the cyclist would ride his bicycle be *685 hind Mrs. Hunt’s car for some distance and then while hidden from view would suddenly turn across the road in front of Wimberly. Under these circumstances, Wimberly breached no duty owed to the cyclist. We note that there were no other children visible in the area.
It is on these findings that we distinguish the cases[2] holding a driver negligent for failing to see one or more children playing close to a highway or roadway and then failing to take action to reduce his speed in anticipation that the child might move into the path of the car.
When a motorist has employed all reasonable precautions to avoid an accident and the sudden act of a child creates an emergency rendering it impossible for the motorist to avoid striking the child, the accident is deemed unavoidable and the motorist is exonerated from liability. White v. Hanover Insurance Company, 201 So.2d 201, La.App. 1 Cir. 1967. See also Goodman v. Southern Farm Bureau Casualty Insurance Company, 216 So.2d 881, La.App. 2d Cir. 1968; Ardoin v. State Farm Mutual Automobile Ins. Co., 205 So.2d 632, La.App. 3rd Cir. 1967.
Considering the evidence in its entirety, we concur in the finding of the trial court that Wimberly timely recognized the emergency and reacted to it as a reasonable prudent driver and was therefore free of negligence proximately causing the accident.
Accordingly, the Judgment of the trial court is affirmed at appellant’s cost.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.

. On cross-examination she agreed that “she pulled somewhat over into the other lane of traffic with part of (her) car in order to give the boy clearance, and then * * * started back completely into (her) lane of traffic * * * ” Tr. 364, 5.

. Ates v. State Farm Mutual Automobile Insurance Co., 191 So.2d 332, La. App.3d Cir. 1966; Sutton v. Rogers, 222 So.2d 504, La.App.2d Cir. 1969; McGraw v. Crook, 205 So.2d 200, La. App.2d Cir. 1967; Hughes v. Gill, 41 So.2d 536, La.App. 1 Cir. 1949; Guillory v. Lemoine, 87 So.2d 798, La.App. 2d Cir. 1956; Haywood v. Fidelity Mut. Ins. Co. of Indianapolis, 47 So.2d 59, La.App. 1 Cir. 1950.