272 So.2d 303 (1972)
William WOOTEN
v.
Howard V. WIMBERLY, Jr.
No. 52012.
Supreme Court of Louisiana.
December 11, 1972.
Rehearing Denied January 16, 1973.
Dissenting Opinion January 19, 1973.
*304 Peter A. Ciambotti, Lake Charles, for plaintiff-applicant.
Stockwell, St. Dizier, Sievert & Viccellio, Fred H. Sievert, Jr., Lake Charles, for defendant-respondent.
SUMMERS, Justice.
William Wooten sued for damages for injuries suffered by his 6½ year old son. The claim arose out of an accident in Calcasieu Parish on May 7, 1965, while the child was riding a bicycle and turned abruptly into the path of an automobile being driven by Howard Wimberly, Jr. At the time Howard Wimberly, Jr. was twenty years of age. Wooten sued Howard Wimberly, Sr., father of the driver, and Wimberly, Sr.'s liability insurer, State Farm Mutual Automobile Insurance Company.
The trial court found Wimberly, Jr., to be free of fault and dismissed Wooten's suit. The Third Circuit affirmed on April 14, 1970, 233 So.2d 682, and writs were refused by this court on June 26, 1970. 256 La. 359, 236 So.2d 496.
In the meantime, Wimberly, Jr., attained the age of majority. After the adverse judgment in the Court of Appeal, but while the application for certiorari, or writ of review, was pending here, Wooten filed, a second, the instant, suit against Wimberly, Jr., on June 17, 1970, based upon the identical facts relied upon to support the claim of the first suit.
Exceptions of res judicata, prescription, improper division of a cause of action and a plea of collateral estoppel were filed on behalf of Wooten, Jr. Since the plea of prescription was maintained by the trial court and Court of Appeal, resulting in the dismissal of plaintiff's suit, we shall consider that plea first. See 254 So.2d 120.
Wooten contends that at the time of the injury to his 6½ year old son, the driver of the automobile, Wimberly, Jr., was a minor, twenty years old, and, therefore, his father Wimberly, Sr., was by law responsible for his minor son's tortious conduct. *305 Assuming for the purpose of the plea of prescription that Wimberly, Jr., was negligent, the father's responsibility is imposed by Article 2318 of the Civil Code in these terms:
The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
See also Article 237 of the Civil Code.
Thus plaintiff argues: because the father was responsible for the alleged tortious conduct of his son, and the minor son is also liable for his own misconduct, the father and son were solidary obligors, for each were "obliged to the same thing, so that each may be compelled for the whole, and ... payment which is made by one of them, exonerates the others toward the creditor." La.Civil Code art. 2091. See also La.Civil Code arts. 1785, 1874 and 2227. And, because "A suit brought against one of the debtors in solido interrupts prescription with regard to all", La.Civil Code art. 2097, the first suit against the father interrupted prescription as to the son with whom he was liable in solido. Therefore, the argument continues, when the instant suit against the son was filed just prior to the termination of the suit against the father the instant suit was timely.
Consideration of this contention should be guided by this proposition:
An obligation in solido is not presumed; it must be expressly stipulated.
This rule ceases to prevail only in cases where an obligation in solido takes place ... by virtue of some provision of law. (La.Civil Code art. 2093.)
When Article 2093 declares that an "obligation in solido is not presumed" but must be "expressly stipulated", this means solidarity may not be presumed in contracts or other writings or in laws creating obligations in solido. That part of the rule which "ceases to prevail" when some "provision of law" creates the solidarity refers to the requirement that the solidarity be "expressly stipulated" in a contract or other writing. It does not mean that the rule that a solidary obligation cannot be presumed is inapplicable to laws imposing the solidary obligation. In other words, a solidary obligation is not imposed by express stipulation in written instruments alone, and the requirement that it be by express stipulation in a contract or other writing ceases only when it is imposed by "some provision of the law." In either case, however, it is not presumed.
The words in solido, solidarity and solidarily are not sacroscant, but the law which creates the solidary obligation should clearly set forth the requisite elements of a solidary obligation. Drafters of the Code have undoubtedly recognized the need to clearly express the solidarity, for they have almost invariably used the words in solido to create or define the obligation.[1]
Solidarity among debtors may be created by contract, by disposition mortis causa, or by operation of law.[2] Since the relationship between Wimberly, Sr., and Wimberly, Jr., is not contractual and no testament is involved, if a solidary obligation existed between this father and son it must have been created by operation of law. That is to say, Article 2318 imposing responsibility on the father for the torts of his minor must, in the main, define the in solido obligation affecting them. In our opinion it does not, and the obligation in *306 solido cannot be presumed. La.Civil Code art. 2093.
An obligation is not solidary merely because each creditor may enforce payment.[3] Nor is it always sufficient to constitute an obligation in solido, that each of the debtors is debtor of the whole thing.[4] For these elements are likewise characteristic of indivisible obligations, and also, in certain respects, to divisible obligations dealt with in Articles 2108 to 2115 of the Civil Code.
In like manner, although the obligation of suretyship is one of the oldest forms of solidary obligations in our law, it is not always regulated by the rules which govern obligations in solido. The surety is liable for the whole debt as is the solidary debtor but as he is an accessory debtor the surety is given privileges such as the pleas of discussion and division which do not extend to the ordinary debtor in solido. La. Civil Code arts. 3045, 3046, 3049. These distinctions are inapplicable, however, when the surety stipulates that he is bound in solido.[5]
No article of the Code has been cited which either expressly or otherwise imposes solidary liability upon the father for the torts of his minor child residing with him. It is true that Article 2324 of the Code provides that "He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damages caused by such act." But the father is not a joint tort feasor; no negligence is charged to him.
Article 2317 places the Article 2318 responsibility of the father in a class separate and apart from the class of persons responsible for their faults, negligence, imprudence and want of skill referred to in Articles 2315 and 2316. "We are responsible," according to Article 2317, "not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable." Article 2318 is an example of this latter class of responsibility and it does not involve the element of solidarity contained in Article 2324 which requires that the party "causes another person to do an unlawful act, or assists or encourages in the commission of it." Indeed, Article 2318 requires no action or inaction on the part of the father. The status of father alone is sufficient to impose responsibility. Pothier said:
Observe, that those who are liable to the reparation of an injury committed by another person, in which they have not concurred, are obliged in a different manner from the authors of the injury.... (Pothier, On Obligations, Vol. 1, Part I, Chapter II, § 2 (1792))
In still another respect the father's responsibility under Article 2318 is not solidary. Article 3552 of the Civil Code provides that the acknowledgment of the debt by one debtor in solido interrupts prescription with regard to all the others. In Cox v. Shreveport Packing Co., 213 La. 53, 34 So.2d 373 (1948) this Court denied the application of this article to the parent-child responsibility under Article 2318 by saying:
We do not understand the law to be that an admission of fault and liability by the perpetrators of a wrong is conclusive as to him who is only secondarily liable such as a master answerable for the torts of his servant or parents responsible for the damages occasioned by their minor children residing with them.
The responsibility imposed on the father by Articles 237 and 2318 is said to be "vicarious". Williams v. City of Baton Rouge, 252 La. 770, 214 So.2d 138 (1968). *307 As more fully stated in Deshotels v. Travelers Indemnity Co., 257 La. 567, 243 So.2d 259 (1971), the status of the father is "vicarious, secondary and derivative"; his liability is, in reality, an absolute liability imposed by statutea liability without fault. Williams v. City of Baton Rouge, supra; Johnson v. Butterworth, 180 La. 586, 157 So. 121 (1934); Sutton v. Champagne, 141 La. 469, 75 So. 209 (1917). See also Barham, Liability Without Fault, 17 La.Bar J. 271 (1970).
There is more: The liability of the father-son relationship cannot be characterized as solidary because nothing in the relationship enables the son to avail himself of the advantages stipulated for codebtors in solido by Article 2104: "If one of the codebtors in solido pays the whole debt, he can claim from the others no more than the part and portion of each...." That is to say, it is plain that a minor son who discharges a debt created by his own independent tortious conduct cannot claim contribution from his father, who had no part in the tortious action but who is nevertheless responsible under Article 2318. It follows, then, that the father who is "answerable" and "responsible" for the minor's torts is also without right to claim contribution from the son, contribution being a right accorded to all solidary obligors. See La. Civil Code arts. 2103, 2104.
In the absence of policy considerations to the contrary, however, it would appear, without deciding the question, that the father has a right to be subrogated to the claim of the party whose damages he has paid and who was injured by his minor son. La. Civil Code art. 2161(3). Or the father's claim may be based upon a theory of indemnity or unjust enrichment. E. g., Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1968). But, in any event, this right to subrogation, indemnification or unjust enrichment is not one arising out of solidarity.
The legal consequences attaching to solidary obligations properly-so-called do not necessarily extend to the legal responsibility of the father for the torts of his minor child. For these reasons, the father in this instance was not a solidary co-debtor with his minor son for the alleged tortious conduct of the son. Therefore, when the first suit was filed against the father, without joining the son, there was no interruption of prescription against the son, and the one year prescription ran its course during the protracted litigation against the father lasting more than four years, ending in June 1970. This suit was therefore vulnerable to the plea of prescription. Cf. Britton & Moore v. Bush, 31 La.Ann. 264 (1879); Croning v. Woods, 15 La.Ann. 168 (1860); Hickman v. Stafford, 2 La.Ann. 792 (1847); McCalop v. Newcomb, 2 La.Ann. 332 (1847) and Jacobs v. Williams, 12 Rob. 183 (La. 1845).
Counsel for plaintiff has urged this Court to be controlled in this case by the holding of the Court of Appeal in Kern v. Knight, 127 So. 133 (1930). As the reasons assigned in the case at bar make clear, there are expressions in Kern v. Knight which are contrary to those announced here. Insofar as Kern v. Knight is in conflict, it is overruled.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
TATE, J., concurs and assigns reasons.
BARHAM, J., dissents and assigns reasons.
DIXON, J., dissents, being of the opinion that the obligation is solidary.
TATE, Justice (concurring).
The writer concurs in the dismissal of the suit. I will advert at the conclusion of this opinion to the reasons therefor. However, *308 in my opinion, the majority reasoning is erroneous and does fundamental violence to our civil law concept of solidary obligations, in holding that the defendants father and son were not solidarily obligated to pay for the son's tort.
The defendant son is liable to the plaintiff for his tort by reason of Civil Code Article 2315, requiring one to repair the damage done by his fault.[1] The father of the minor son is likewise liable to pay the damages occasioned by his minor son by reason of Civil Code Art. 2318, providing for parental responsibility for a minor's delicts.[2]
By operation of law, the father and the son are thus each bound for the whole of the obligation, i. e., to repair the damages caused by the son's fault. Either of them may be compelled to pay the whole of the said damages. Payment by either exonerates the other toward the creditor.
Under these circumstances, the obligation is solidary by operation of the law: "There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the other toward the creditor." Article 2091.[3]
In disregarding the unambiguous expression of this article, the majority relies upon Article 2093, which provides:
"An obligation in solido is not presumed; it must be expressly stipulated.
"This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."
The majority is influenced by a similar erroneous construction of the Article in Cox v. Shreveport Packing Co., 213 La. 53, 34 So.2d 272 (1948). There, we held that a master and a servant are not solidarily obligated for the latter's employment-related tort. The Cox misinterpretation in 1948 may be excused by the dearth then of translated doctrinal explanations of the reason for the Article and its function in our Code. There is no longer any such excuse for such misconstruction of the Article to overlook its meaning within the context of and in accordance with its function in our Civil Code, as illuminated by its civilian history and interpretations furnished by the Louisiana State Law Institute translations of Planiol and Aubry & Rau to be referred to.
The effect of this misinterpretation is to hold that, simply because of Article 2093's presumption against solidarity, we will not classify an obligation as in solido despite the circumstance that, in fact, the parties are each separately bound as a matter of law to pay the whole of the obligation and are, thus, solidarily bound. Articles 2082, 2091. However, the purpose of Article 2093 is not to prohibit denoting a solidary-in-fact obligation as solidary; it is, rather, to help to determine whether two or more persons bound together are "joint obligors", Articles 2080, 2081, thus each responsible only for his portion of the obligation,[4] or instead are "solidary" obligors, *309 each of whom may be compelled to pay the whole. Planiol, Civil Law Treatise, Vol. 2, Sections 715, 735, 736 (LSLI Translation, 1959); Aubry & Rau, Obligations, Section 298b (1 Civil Law Translations, LSLI; 1965).
Instead of utilizing Article 2093 for its functional purpose to determine whether an obligation is joint or solidary, the majority uses it as a device for stripping from an obligation which is solidary by operation of law, some of the legal consequences which flow from its being so as defined by Articles 2082 and 2091. There is no legal, functional, or historical justification for this misuse of the Article. It would be as illogical, for instance, for one to conclude that, because (the majority holds) the father and the son are not solidarily bound, therefore by separate suits one could collect the same damages twice, since (not being debtors in solido) payment by one does not exonerate the other.
The defendants also argue that the obligation may not be solidary, because the father's obligation is vicarious. The two concepts are not mutually exclusive. A liability may be vicarious (a strict liability without fault, imposed by statute), and it may also be solidary.
For instance, the owner-landlord of premises is held to strict liability or to liability without fault, for injury sustained by others through the defective condition of the premises. Article 2322. A tenant may likewise be liable to a third party injured through defects in the premises caused by the tenant's fault. Article 2315. The owner-landlord and the tenant are solidarily liable to the third person injured by the premises' defect, even though (as between the owner-landlord and the tenant) the owner is only vicariously liable. Gilliam v. Lumbermens Mutual Cas. Co., 240 La. 697, 124 So.2d 613 (1960); Klein v. Young, 163 La. 59, 111 So. 495 (1927); Green v. Southern Furniture Co., 94 So.2d 508 (La. App. 1st Cir. 1957); Terranova v. Feldner, 28 So.2d 287 (La.App.Orl.1946). See also Comment, 44 Tul.L.Rev. 119, 119-120, 152-155 (1969) and Comment, 42 Tul.L. Rev. 178 (1967). Likewise, a liability insurer and a tortfeasor may be solidarily liable (on the principle that each is bound for the whole), although not expressly so stipulated. Hidalgo v. Dupuy, 122 So.2d 639 (La.App.1st Cir. 1960), certiorari denied.
Similarly, the majority concludes that the liability of the father-son for the tort cannot be recognized as solidary, since the son cannot claim contribution from his father. This overlooks Article 2106, which provides: "If the affair for which the debt has been contracted in solido, concern only one of the coobligors in solido, that one is liable for the whole debt towards the other co-debtors, who, with regard to him, are considered only as his securities." See Planiol, Civil Law Treatise, Volume 2, Sections 767, 768 (LSLI Translation, 1959.) As long settled in Louisiana, one only vicariously liable for the torts of another may be idemnified from the actual tort-feasor's estate. Appalachian Corporation v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539 (1922).[5]
In summary, therefore, in the writer's opinion, the majority misconstrues our Civil Code Articles when it holds that the obligation of the defendant father and the defendant son are not solidary.
*310 Nevertheless, although ordinarily a creditor's suit against one of the solidary debtors interrupts prescription with regard to all, Article 2097, this is not necessarily conclusive of the issue before us. Since I am not writing for a majority, I will suggest several alternative reasons why this suit should be dismissed in limine, without a trial on the merits, without necessarily deciding at this time which, if any of them, are valid.
In my opinion, the majority's dismissal of this suit, while probably correct for the wrong reasons, is dictated by the hard facts presented to us: The plaintiff had his full day in court, when by his 1965 suit he sued the defendant father to recover damages caused by his then-minor son's tort, for which he was vicariously liable. The trial on the merits held that the son was without fault and, therefore, dismissed the suit against the father. Thereupon, urging the same cause of action, the same plaintiff files a suit upon the same cause of action, this time against the son himself, now a major.
The hard facts presented suggest that the plaintiff should not twice vex the court system and the same family and liability insurer with the identical claim. On the other hand, the triple-identity (object demanded, cause of action, parties) required for res judicata to bar the second suit, Article 2286, does not seem to be present here, since the defendant parties (father, son) are different in the two suits.
I suggest that one or more of the following lines of reasoning may provide the doctrinally correct regulation of these hard facts, without in this concurring side-opinion committing myself to any of them until such time as it becomes necessary to devote in-depth research for an expression of the court itself:
(1) With regard to the plaintiff asserting the identical action to obtain the same object against the son, it is possible that the son-father, for this purpose, are the same person, mandataries of one another. "As solidary debtors have a community of interests by reasons of their solidarity, they are considered, with respect to the common debt, to be mandataries for each other as to everything which tends to ameliorate their position towards the creditor. Thus all of them may benefit from a settlement concluded by one of them, a judgment one of them has obtained [etc.]", Aubry & Rau, Obligations, Section 298b, p. 32 (1 Civil Law Translations, LSLI, 1965). (Italics ours.)[6]
(2) Under traditional civilian doctrine, the similar liability of the present two individuals for the same tort is technically known as "imperfect" solidarity (a liability for the same debt arising out of different acts or at different times), as contrasted with "perfect" solidarity (when the debtors bind themselves to the performance of the same act at the same time). Aubry & Rau, Obligations, Section 298b, fn. 6 (1 Civil Law Translations, LSLI, 1965); Comment, Solidary Obligations, 25 Tul.L. Rev. 217, 230 (1957), citing Gay v. Blanchard, 32 La.Ann. 497 (1880) and Klein v. Crescent City Rwy., 41 La.Ann. 1032, 6 So. 851 (1889). If there is a distinction in effect, the sole distinction is that a suit brought against one "imperfect" solidary debtor does not interrupt prescription with regard to other co-debtors, since (it was held) the codal provision under solidary obligations applied only to "perfect" solidarity. See, e. g., Jacobs v. Williams, 12 Rob. 183 (1845).[7] *311 (3) The determination in the first suit against the father, at which the plaintiff was fully represented (and there being no suggestion of collusion), that the defendant's son was without fault, may deprive the plaintiff of a cause of action against the son.[8] We have held that a prior extinguishment of a claim against one primarily bound deprives the creditor of a cause of action, demanded subsequently, against a person only vicariously or secondarily bound for the same debt. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960). See Note, 14 La.L.Rev. 901 (1954). I do not know why any value of our law would be ignored by holding to similar effect, thus barring a subsequent suit against the solidary debtor primarily liable for his fault, when in a prior suit by the same plaintiff against a person only vicariously liable for such fault it had been determined that the primary debtor was without fault.[9]
(4) If in the first suit the plaintiff had received judgment decreeing the son's fault and fixing the damages, he could not, after collecting same, have instituted suit to recover the same damages. When payment is made by one solidary obligor, it exonerates his co-obligor with regard to the creditor. Article 2091. By analogy, when in a suit against one obligor it is determined that no obligation exists, can the plaintiff, who has had his full day in court, complain of this exoneration obtained by the first obligor being used as a peremptory defense against a second suit against the co-obligor?
For these reasons, I tentatively concur in the majority's affirmance of the dismissal of this suit, although I believe the rationale is doctrinally unsound and may cause much trouble in the future. I earnestly hope that, if application for rehearing is made, this court will have the opportunity to reconsider the rationale and, possibly, its ruling.
BARHAM, Justice (dissenting).
The majority has considered only one issue, and I believe properly so. That is whether or not the ruling on the plea of prescription by the trial court as affirmed by the appellate court was correct. Contrary to the majority, I find that ruling to be incorrect.
The defendant's son is liable to the plaintiff under Civil Code Article 2315 for his own delicts, and the defendant father is likewise liable under Article 2318 vicariously for the delicts of the son. I adopt the reasoning of Mr. Justice Tate that these obligations of the son and the father are solidary obligations. I thoroughly agree with his conclusion that the majority incorrectly dismissed the suit against the minor son under a plea of prescription.
However, I must disagree with Mr. Justice Tate's conclusion that the result is correct. Only one issue was presented to the trial court, the appellate court, and this court, and that was the correctness of the sustaining of the plea of prescription. The parties to this lawsuit have not had their day in court on any matter except the plea *312 of prescription. While this court may decide the case before it as on appeal, it would be error for this court to move to a ruling upon pleas which, although filed in the lower court timely, have never been argued or presented to any court for determination.
Although plaintiff's suit should be dismissed under the plea of res judicata, dismissal should not come without a hearing on the proper exception. When this suit against the son was filed in the trial court on June 17, 1970, the suit against the father was pending before our court on writ application. That writ application was not refused until June 26, 1970. Therefore this suit when filed was not res judicata, for at that time the suit against the father was not a thing finally adjudged.[*] However, with the writ refusal the judgment dismissing plaintiff's suit against the father became a final judgment. It was at that moment that a plea of res judicata would lie in the suit of the plaintiff against the son.
A suit against one bound solidarily for the debt with another satisfies the requirements of a plea of res judicata under Civil Code Article 2286. The demand is the same, the demand is founded on the same cause of action, and the demand is between the same parties, for as to the plaintiff in a suit on a solidary debt one solidary obligor is the same as the other solidary obligor. Mr. Justice Tate's reasoning under (1) and (4) in his concurring opinion supports this conclusion. The plea of res judicata is one which permits evidence if needed, and certainly it is one which permits argument, and certainly it requires submission or presentation to the court for determination since it cannot be noted ex proprio motu.
I strongly urge that the majority opinion in this case not be allowed to stand in our jurisprudence. I believe it to be totally erroneous in its discussion of the solidary obligation and totally erroneous in its application of the law of prescription. I urge reconsideration by this court for reargument or remand so that the case may be properly disposed of. For these reasons I respectfully dissent.
BARHAM, Justice, dissenting from the Refusal to Consider the Rehearing Application.
I believe that it was error to refuse to consider the rehearing application in this case, which involves an important question of law and was decided by a divided court (two dissents and a concurrence). The final day for the filing of this rehearing application was December 26. On that day the postman attempted to deliver to the clerk's office the special delivery package containing the application, but the attempt was sometime between 7:30 and 8:30 a. m. and the building was closed. Since the Governor had declared that day a legal holiday, the postman assumed that the Supreme Court offices would be closed for the entire day. In fact, however, the Supreme Court offices and the front door of the building were opened at 9:00 a. m. and remained open for a full working day.
The law pertinent to the filing of rehearing applications is found in Rule XI, Section *313 1, of the Supreme Court Rules: "Petitions for rehearing must be filed on or before the fourteenth calendar day after the rendition of judgment, and no extension of time therefor will be granted. * * *" See also Article 2166, C.C.P. The arguments I made in my dissent in Bailes v. Southern Farm Bureau Casualty Ins. Co., 261 La. 106, 259 So.2d 29 (1972), also apply here even though in Bailes the applicable law, Article VII, Section 11, of the Louisiana Constitution, provided only that the application had to be "made" within 30 days, and the requirement in this instance demands that the application be "filed" on or before the fourteenth day. While Rule XI is more specific and demanding, there are two approaches which warrant a consideration of this rehearing application.
First, since the Governor had declared December 26 a legal holiday under the authority granted to him by R.S. 1:55, that day should not have been counted as the last day of the 14-day period. "* * * The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday." Art. 5059, C.C.P. The exact count of 14 days after rendition of the opinion in this case falls on December 25, and the majority of this court had no difficulty in concluding that that day was a legal holiday which extended the time period for the filing of the rehearing application. Certainly the same reasoning should have been followed for the day of December 26. Although the proclamation of the Governor declared that agencies of the State should continue with all functions deemed indispensable by the heads of the agencies, and under this provision the clerk's office of the Supreme Court was opened, attorneys and litigants should be entitled to rely upon the Governor's declaration of a legal holiday.
The second reason for considering this application for rehearing is the failure of the post office to deliver the special delivery package on December 26 although the Supreme Court offices were open. The failure of the postman to attempt to deliver the package later in the day on the assumption that the Supreme Court was observing the holiday declared by the Governor should not be held as binding on the applicant for rehearing. In effect, the majority has ruled that it is acceptable for the postman to assume that the Supreme Court offices will be closed, but that the attorney for the applicant cannot make that same assumption.
For these reasons I am of the opinion that the rehearing application should have been considered.
NOTES
[1] See La.Civil Code arts. 437, 1681, 2082, 2083, 2087, 2088, 2091, 2107, 2113, 2285, 2324, 2804, 2872, 2905, 2957, 3009, 3014, 3026, 3039, 3045, 3049.
[2] Aubrey and Rau, Cours DeDroit Civil Francais, Vol. IV-6th Ed, Obligations § 298b, an English Translation by the Louisiana State Law Institute.
[3] Ibid. § 298b.
[4] Pothier, A Treatise on the Law of Obligations, Vol. 1 § 262 (1762).
[5] Cohen, Solidary Obligation, 25 Tul.L.Rev. 217 (1951).
[1] Although the son was a minor at the time of the tort, his minority is not a defense against his personal liability for damages caused by his negligence. Civil Code Articles 1785 (Par. 5), 1874, and 2227. See Redd v. Bohannon, 166 So.2d 362 (La.App.3d Cir. 1964).
[2] See Deshotel v. Travelers Indemnity Co., 257 La. 567, 243 So.2d 259 (1971) for discussion of this vicarious liability.
[3] See also Article 2092: "The obligation may be in solido, although one of the debtors be obliged differently from the other to the payment of one and the same thing; for instance, if the one be but conditionally bound, whilst the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other."
[4] As distinguished from a solidary obligation, the "joint" obligation of our Civil Code is where several persons join in the same contract to do the same thing, Articles 2080, 2091, where all joint obligors must be joined in any suit to enforce the obligation, Articles 2085, 2087, and where each joint obligor is held liable only for his proportion of the obligation. Article 2086.
[5] As an aside, I may note that, possibly, under Article 2106 a child capable of negligence may be the co-obligor primarily concerned, but the father himself may be co-obligor primarily concerned, when the child is too young to be held personally liable for his acts which do harm to others. The writer raises the question, but he suggests no answer now. See Planiol, Civil Law Treatise, Volume 2, Section 879 (LSLI Translation, 1959).
[6] See also 1 Pothier on Obligations, P. IV c. 3 s. 3 Art. V, par. 59 (at p. 502) (Evans translation, 1826), noting that the parties are regarded as the same where a creditor has sued one of the solidary obligors on an indivisible obligation and lost; the others may pose the first judgment as a bar to the second suit since, "from the indivisibility of their right, they are regarded as the same party."
[7] Although the writer notes this as a possible basis for reaching the same result as the majority did, it is his personal opinion that the Louisiana Civil Code does not admit of "imperfect" solidarity, not referred to at all in the text. See criticism of concept of imperfect solidarity with regard to French Code in Planiol, Civil Law Treatise, Volume 2, Sections 777, 778 (LSLI Translation, 1958).
[8] If not appearing on the face of the papers, under our procedural law it could not be asserted by the peremptory exception to that effect, La.C.Civ.P. Art. 931, unless evidence without objection was admitted at the trial thereof. However, it could be raised by motion for summary judgment. La.C.Civ.P. Arts. 966-968.
[9] The common law, however, would not bar the subsequent suit against the primary debtor (the indemnitor), if the first suit was against the person only vicariously liable (the indemnitee). Restatement of Judgments, Sections 96, 99 (1942). However, the reasons cited in the explanatory comments for barring a second suit in the converse situation seem equally to support an identical rule barring a second suit to recover the same claim, whether the first suit was against the indemnitor or the indemnitee.
[*] Civil Code Article 2286 defines res judicata, stating in part: "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. * * *" Civil Code Article 3556 (31) states in definition: "Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal." Code of Civil Procedure Article 1841 provides in part: "A judgment that determines the merits in whole or in part is a final judgment." Code of Civil Procedure Article 1842 states: "A final judgment is definitive when it has acquired the authority of the thing adjudged." Code of Civil Procedure Article 2167(2) provides: "A judgment of a court of appeal becomes final and executory when the supreme court denies a timely application for a writ of certiorari in the case * * *."