293 So.2d 246 (1974)
COMMERCIAL INSURANCE AGENCY, INC., Plaintiff-Appellee,
v.
Leroy G. WILSON, Defendant-Appellant.
No. 4477.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1974.
*247 Gravel, Roy & Burnes, by Chris J. Roy and Dan E. Melichar, Alexandria, for defendant-appellant.
Gist, Methvin & Trimble, by James T. Trimble, Jr., Alexandria, for plaintiff-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Defendant Leroy G. Wilson appeals from a judgment awarding plaintiff Commercial Insurance Agency, Inc., $4,232.73 for past due insurance premiums. Wilson contended at trial and on appeal that the claim prescribed. We affirm.
Commercial filed suit on June 5, 1972 for premiums advanced by Commercial on Wilson's behalf in payment of policies purchased by Wilson from January 12, 1954 through January 12, 1969. Wilson's last payment was made on May 23, 1967. On January 22, 1968, the last credit to Wilson's account was entered on Commercial's books as a $9 return premium. The correctness of Wilson's account on Commercial's books was not contested at trial or on appeal.
Wilson's exception of prescription alleged that Commercial's petition represented a suit on open account subject to a three year prescriptive period. Commercial contends that the ten year prescriptive period is here applicable.
The trial court applied the holdings of Great American Indemnity Company v. Laird, 73 So.2d 6 (La.App. 2 Cir. 1954), and McElroy v. Parry, 152 So. 793 (La. App. 2 Cir. 1934). LeBouef v. Riera, 176 So.2d 216 (La.App. 4 Cir. 1965) was, in effect, found to be overruled by Cusimano, Inc. v. Cusimano, 216 So.2d 344 (La.App. 4 Cir. 1968). The ten year prescriptive period of LSA-C.C. art. 3544 was applied rather than the three year period of art. 3538.
On appeal Wilson continues to press the applicability of art. 3538 rather than art. 3544. More strongly urged, however, is the proposition that even though an insurer may urge the ten year prescriptive period, its agent cannot assert the application of that period unless it is conventionally or legally subrogated to the claim of the insurer. Commercial asserts that the trial judge correctly applied the ten year prescriptive period and that Commercial was in fact subrogated to its insurers' actions for premiums.
LSA-C.C. art. 3538 lists the following actions as being prescribed in three years:
That for arrearages of rent charge, annuities and alimony, or of the hire of movables and immovables.
That for the payment of money lent.
That for the salaries of overseers, clerks, secretaries, and of teachers of the sciences who give lessons by the year or quarter.
That of physicians, surgeons and apothecaries for visits, operations and medicines.
That of parish recorders, sheriffs, clerks and attorneys for their fees and emoluments.
That on the accounts of merchants, whether selling for wholesale or retail.
That on the accounts of retailers of provisions, and that of retailers of liquors, who do not sell ardent spirits in less quantities than a quart.
That on all other accounts.
This prescription only ceases from the time there has been an account acknowledged in writing, a note or bond given, or an action commenced. *248 LSA-C.C. art. 3544 provides that "[i]n general, all personal actions, except those before enumerated, are prescribed by ten years."
Postponing momentarily a consideration of the effect of the interposed agency, the weight of authority persuasively stands for the proposition that an action by insurers is governed by the general ten year prescriptive period for personal actions.
Having stated the facts as we find them, it is now necessary to determine if the prescription of three years or ten years is applicable to this case. Plaintiff issued the policies as agent of the insurance companies and was required within a certain time to pay the insurance companies the premiums. He did this, and, of his own volition, extended credit to defendants. The insurance companies were not concerned with the collections made by its agent, and after its agent had extended credit, the insurance companies could not have canceled the policies during the term stated in the policies. Each policy when issued was a separate contract between the insurer and the insured, and the policy itself was the best evidence of the contract and the amount due thereunder. We think it clear that under said written contract, the insurer could have sued and recovered, provided it had filed suit within ten years after the premium was due, and that the prescription of three years would not have been a bar to said action. When insurer's agent, plaintiff herein, paid to insurer the amount of the premiums due under each policy by the insured, he became subrogated to all the rights of the insurer. It therefore follows that the plea of prescription of three years is not applicable here and was properly overruled by the lower court.
 (Emphasis added.)
McElroy v. Parry, 152 So. 793 at 794 (La. App. 2 Cir. 1934). That language was cited approvingly in Calvert v. Harper, 205 So.2d 193 (La.App. 2 Cir. 1967); Great American Indemnity Co., v. Laird, 73 So. 2d 6 (La.App. 2 Cir. 1954); Calhoun & Baines, Inc., v. Epstein Land & Improvement Co., Inc., 165 So. 539 (La.App.Orl. Cir. 1936). The holding in McElroy, that the general prescriptive period of ten years for personal actions was applicable in an action for collection of past due premiums, was followed in those cases. The cases involved actions by agents for collection of premiums advanced to their respective principals, except Laird, which involved a direct action by the insurer.
Contrary to the above authorities is LeBoeuf v. Riera, 176 So.2d 216 (La.App. 4 Cir. 1965). The court there applied the three year prescriptive period for open accounts. The contrary authorities were not noted or discussed. In Cusimano, Inc. v. Cusimano, 216 So.2d 344 (La.App. 4 Cir. 1968), the court reassessed its position. Cusimano involved an action by an agent for recovery of premiums advanced, as did LeBoeuf. The court in Cusimano did not specifically hold the ten year prescriptive period applicable, but nevertheless implied that it would so hold if it were found that the insurance agent had in some way become liable to the insurer for payment of premiums. 216 So.2d at 345-346. See also Perrin v. Saunders, 198 So.2d 555 (La. App. 4 Cir. 1967).
As to the prescriptive period applicable to the insurer's right to recover premiums, these authorities uniformly apply the ten year period rather than the three year period. Wilson neither cites authorities nor suggests reasons to apply the three year prescriptive period to insurers for recovery of premiums.
Wilson attacks the trial court's ruling on the basis that Commercial never became subrogated to the rights of its principals, either conventionally or legally. Wilson points to the finding in McElroy, Calvert, and Calhoun that the agents had become subrogated to the rights of their principals. *249 Wilson also alleges that the action of the Fourth Circuit in remanding Cusimano and Perrin for evidence on the matter of whether or not the agents in those cases had a right of action, points to the necessity of finding subrogation before an agent may claim entitlement to the ten year prescriptive period available to insurers.
Wilson urges that no conventional obligation was alleged or proven. He also asserts that, due to the recent Supreme Court decision in Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So. 2d 502 (1969), Commercial could not prove subrogation unless it showed that it was a solidary obligor with Wilson.
LSA-C.C. art. 2161(3) is the only basis asserted by Commercial for its status as subrogee. The article provides "Subrogation takes place of right: ... 3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it...." (Emphasis added.) Commercial squarely meets the literal requirements for subrogation. Under the terms of Commercial's agreement, it was bound to pay premiums to the same extent as the insured. Commercial had an interest in the discharge of the debt, namely, the fulfillment of the obligation to pay its principal under its contract.
Introduced without objection was the "American General Companies Premium Accounting and Payment Rules." Tr. 13. The president of Commercial testified that this document is part of the Agency agreement. American General was only one of the companies Commercial represented, he continued, but the terms were standard for all fire and casualty companies. The rules provide:

2. Payment of Premiums:

* * * * * *
If THE AGENT advances premiums on behalf of policyholders, he accepts full responsibility for such premiums. THE AGENT agrees to hold all premiums collected by him as a fiduciary in trust until payment shall have been duly made as aforesaid: and also to hold until paid over or delivered to THE COMPANY all other monies or property received by THE AGENT for THE COMPANY; and that THE AGENT'S privilege of retaining commissions shall not be construed as changing said fiduciary relationship.
Both THE AGENT and THE COMPANY are bound by the above Rules.
* * * * * *
4 Non-Responsibility of Agent: If written notification is given THE COMPANY of collection difficulties within the time specified below, THE AGENT will be relieved of responsibility to pay premiums in the following instances:
(a) Fifty days after effective date of renewal bond premium, or
(b) Thirty days after receipt by THE AGENT of premium charges resulting from audits or interim reports.
Failure of THE AGENT to give THE COMPANY such written notice of his inability to collect such premiums shall constitute acceptance by THE AGENT of responsibility to pay such premiums, including the accumulated premiums earned on the insured's current and renewal policies written subject to audit.
Under the quoted provisions, Commercial became bound to pay premiums as soon as the time periods described in Rule 4(b) lapsed and no written notification was given the insurer. Under this and similar agreements, then, Commercial became obligated for payment of the premiums, the same obligation originally undertaken by Wilson.
Wilson heavily relies upon Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (1969). He emphasizes that the following language (particularly the italicized portion) necessitates a *250 finding of solidarity between co-debtors before subrogation takes place by operation of law:
The subcontractors maintain, however, they fulfil all requirements for subrogation under Subparagraph 3, declaring that subrogation takes place of right in favor of him, who "being bound with others" pays the debt that he had an interest in discharging.
Clearly this language presupposes the existence of a solidary obligation. If no solidary obligation exists, subrogation does not take place.
In denying subrogation under this clause, the Court of Appeal held:
"[T]he subcontractors and owners were not and indeed could not have been solidarily liable to the laborers whose claims are herein asserted. Under the circumstances herein the owner was never liable to the laborers as no liens were filed by any party occupying such status. Under the lien law, no liability arises on the part of the owner until the lien is recorded. Since the owner was never liable to the laborers, it necessarily follows he was not liable for such wages, solidarily or otherwise, with those primarily obligated for the wages earned.
"In the instant case when the subcontractors herein involved paid the wages for which they now claim subrogation, said subcontractors were the sole debtors and prime obligors of the laborers concerned."
After reconsideration, we conclude the Court of Appeal correctly disposed of this issue. It is now apparent we erred in holding the owner became a debtor of the laborers "as soon as the services are performed." As we have demonstrated, the personal liability of the owner comes into existence only when laborers file their claim. Since the owner was no debtor, there can be no solidary obligation.
 (Emphasis added.)
226 So.2d at 515-516
The italicized language stands as impressive authority, authority which commands solidarity before subrogation under 2161(3) may exist. The instant case and the above authority are distinguishable. In Pringle, the subcontractors were found not subrogated under 2161(3) to the laborers' rights against the owner because the laborers had not filed liens. In effect, the laborers were never obligees of the owner and were obligees of the subcontractor only. Since the owner never became a co-obligor of the subcontractor, the subcontractor never became bound with others or for others for payment of the debt as required before subrogation may occur under 2161(3). Since no subrogation had taken place due to the fact that the subcontractor and owner were never co-obligors, the pronouncement (that subrogation under 2161(3) may not take place save for existence of a solidary obligation) may have been unnecessary for disposition of the case. The instant case has the distinguishing feature that under the terms of its agency agreements, Commercial had become bound for payment of Wilson's premiums.
Nevertheless, we find an adequate basis at law for holding that Commercial and Wilson were solidary obligors. Standing as authoritatively as the pronouncement in Pringle that one may become a subrogee under 2161(3) only if a solidary obligor, is the finding in Gay & Co. v. Blanchard, 32 La.Ann. 497 (1880), that there is more than one type of solidarity. The court there held that persons who became bound at different times by different acts for performance of the same thing are nevertheless solidarily bound.
We held in our former opinion that Pike and Mrs. Suthon were not debtors in solido in the sense of the Code. Solidarity may be perfect or imperfect. It is perfect, and the obligors are the mandataries of each other, when by the same act, at the same time, they bind themselves to the performance of the same thing. It is imperfect (and they are not mandataries of each other) when they *251 bind themselves to the same thing by different acts or at different times. See Marcade, vol. 4, p. 509; also [Jacobs v. Williams] 12 R. 183; [McCalop v. Newcomb] 2 An. 332; [Corning v. Wood] 15 An. 168.
While, therefore, we think it clear that Mrs. Suthon was neither security of, nor co-obligor in solido with, Pike, still she was bound "with" him for this debt; and as Pike was, under his contract with her, the ultimate debtor, upon her paying the debt, she was entitled to a full * subrogation thereto, as well as to the mortgages and privileges securing it. This was expressly held in the case of Baldwin v. Thompson, 6 La. 475, a case in all respects similar to this.[1] 32 La.Ann. 502, 503.
Pursuant to the doctrine of imperfect solidarity, we find that Commercial became subrogated to the rights of its insurers in seeking recourse against Wilson. Commercial and Wilson both became bound for payment of premiums. Wilson became bound when he entered the contract of insurance. Commercial became bound under its agreements with its respective insurers. Commercial was thus bound with Wilson for payment of the premiums and discharged that obligation when it advanced the premiums. Subrogation took place under 2161(3) and the requirement imposed upon application of that article in Pringle has been satisfied.
An even more fundamental basis for application of the ten year rather than the three year prescriptive period exists. In determining whether the three year prescriptive period for suits on open account applies, the determinative factor is not whether or not the creditor issues a statement of account, but is determined by the nature of the debt owed. This analytical concept was utilized in Antoine v. Franichevich, 163 So. 784 (La.App.Orl.1935), affirmed 184 La. 612, 167 So. 98 (1936).
The action in Antoine involved suit by a plumbing and heating contractor for recovery of charges for fourteen repair and improvement jobs. The court ruled that the fact that plaintiff had issued statements of account did not alter the inherent nature of the obligation as one for payment for services rendered.
It is true that plaintiff uses the words "statements of account," but he does not thereby make the suit one on an account within the contemplation of Civ.Code, art. 3538. The use of the word "account" is noted in all of the above-quoted decisions, but the word is used in those decisions and is used here in a sense different from that contemplated by the article of the Code referred to. In the Code it is intended that the word shall include sales on account, and not that the mere fact that an account must be rendered, or a bill must be sent out, for personal services rendered shall deprive the claimant of his rights in a shorter time than is fixed in the particular article of the Code which determines the prescriptive period for claims of the particular kind involved.
In other words, it cannot be said that a contractor who does work under a written contract and then who later does further work for the same person, under another written contract and who would be entitled to a period of 10 years within which to bring his suit for the price of the two jobs, loses his right to sue at any time within the 10-year period merely because he sends a bill or statement of account to the person for whom the two jobs have been done. The prescriptive period is fixed by the nature of the debt *252 and not by the fact that an account is rendered showing that the debt is due.
163 So. at 786
The reasoning in Antoine is sound and persuasive. The fact that Commercial kept an account of premiums due does not alter the fact that for performance of the contract of insurance, Wilson was bound to pay the premiums. The obligation remained the same. It is the nature of the obligation which determines the prescriptive period.[2]
It has been neither alleged nor shown that Commercial had no right to seek recovery of the premiums. The president of Commercial testified that premiums were advanced. The agency agreement between Commercial and its principals placed authority and responsibility for collection in Commercial's hands.
The trial court judgment is affirmed at appellant's costs.
Affirmed.
NOTES
[1] For a scholarly and in depth analysis of the doctrine of imperfect solidarity, see J. Denson Smith, Work of Appellate Courts, 1966-67, Insurance, 28 La.L.R. 372 (1968); and Comment, 25 Tul.L.R. 217, 228. See also Wooten v. Wimberly, 272 So.2d 303 (La. 1972), particularly Justice Tate's concurring opinion 272 So.2d 307 at 310, where doubt is cast upon the proper application of the doctrine of imperfect solidarity.
[2] The soundness of this analysis in determining the proper prescriptive period is discussed by Joseph Dainow, Work of the Appellate Courts 1968-69, Prescription, 30 La.L.R. 235 (1969). See also, Joseph Dainow, Work of the Appellate Courts 1972-73, Prescription, 34 La.L.R. 277 (1974); Joseph Dainow, Civil Code and Related Subjects, Prescription, 20 La.L.R. 235 (1960).