506 So.2d 788 (1987)
Kenny BORDELON
v.
Marshall A. SMITH, III and Gulf Coast Well Service, Inc.
No. 86-CA-0036.
Court of Appeal of Louisiana, First Circuit.
April 14, 1987.
Rehearing Denied May 29, 1987.
*790 Warren G. Deagano, Jr., New Orleans, for plaintiff-appellee Kenny bordelon.
John E. Seago, Baton Rouge, for defendant-appellant Marshall Smith, III, Gulf Coast Well Service, Inc.
Before EDWARDS, WATKINS and Le BLANC, JJ.
EDWARDS, Judge.
This is a suit for breach of contract. According to the contract instrument, which was introduced into evidence, there were three parties to the agreement; Gulf Coast Well Service, Inc., Marshall Smith, III, and Kenny Bordelon. The instrument, which was executed in 1976, provides that Bordelon became a limited partner with a three percent interest in a partnership known as Gulf Coast Well Service Rigs upon paying $10,000.00 cash and executing a note in favor of the partnership. The provision of the agreement, however, which gives rise to this breach of contract suit is as follows:
As additional consideration for said contribution to partnership capital, made as aforesaid, Corporation and Smith agree:
1. That the amount of loss attributable to the limited partnership interest of Partner in Commendam for the tax year 1976 shall be no less than $9750.00 and the amount of tax credit for 1976 shall be no less than $3600.00.
2. To purchase on November 15, 1981, or prior thereto in the event of liquidation, from Partner in Commendam all of his partnership interest for the price of $10,000.00, payable in cash, or, at the option of purchasers, two-thirds may be paid in cash and one-third in quarterly installments over a period of one year from date of sale, bearing interest at the rate of 10% on the unpaid balance, until paid.
3. To personally guarantee payment of all payments due by Corporation under the terms of the said agreement.
The defendants did not repurchase plaintiff's interest on November 15, 1981, and they refused to do so when the plaintiff made a formal demand. After a trial on the merits, the court rendered judgment in solido against the defendants for $10,000.00 plus interest. Smith appeals.
Appellant contends that the agreement granted Bordelon an option which expired on November 15, 1981, to sell back his partnership interest. According to appellant, since Bordelon did not timely exercise the option, defendants were not obligated to purchase his interest. "Interpretation of a contract is the determination of the common intent of the parties." LSA-C.C. art. 2045. Nevertheless, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." LSA-C.C. art. 2046.
There is absolutely nothing in the written agreement to evidence that the agreement in question was an option. Thus appellant asks this court to disregard the clear and explicit words of the written agreement and adopt instead his declaration that the parties actually intended an option. The contract clearly states that Bordelon was to contribute money for a partnership interest, receive certain losses and tax credits, *791 and that on November 15, 1981 (or earlier in the case of liquidation) Smith and Gulf Coast Well Service, Inc., would repurchase Bordelon's interest for $10,000.00.
Appellant argues, however, that the written agreement does not state that Bordelon agreed to sell his partnership interest. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." LSA-C.C. art. 2050. It is clear from the contract as a whole that Bordelon put up $10,000.00 in 1976 with the understanding that he would get it back in 1981. Had the parties intended an option, they could easily have used option language in the instrument. They did not.
Appellant also argues that Bordelon was estopped from getting his money back because he waited until 1984 to make formal demand. According to appellant, an earlier sale of Bordelon's partnership interest would have had adverse tax consequences for him. The tax consequences of the plaintiff's action have absolutely nothing to do with this lawsuit.[1] Furthermore we know of no law, and we have been referred to none, which would require plaintiff to make formal demand on defendants shortly after November 15, 1981, or be estopped from doing so. In any case, the record reflects that plaintiff began trying to get his money back in early 1982.
Bordelon testified that he made several attempts to reach Mr. Smith by phone during 1982 and 1983, and he introduced telephone bills which showed several calls to Mr. Smith's Houston office phone number. Mr. Smith, however, said that he never received any messages from Mr. Bordelon. In any event, plaintiff did make a formal demand on defendants in 1984, and filed this suit within the prescriptive period.
Defendants also argue that plaintiff received slightly more than $10,000.00 in actual cash payments and tax benefits from his investment in the partnership, and therefore that he is not entitled to the return of his $10,000.00. This argument overlooks the very fact that one of the provisions of the contract signed by all three parties was that the defendants would buy back plaintiff's partnership interest, partnership cash distributions and tax credits notwithstanding. In sum, defendants agreed to buy back plaintiff's partnership interest on a certain date, and they did not. Thus they breached the contract.
Appellant maintains in any case that the trial court erred in casting him in judgment in solido with Gulf Coast Well Service, Inc. Smith is bound, both as a principal and as a surety. As principals, he and the corporation bound themselves to repurchase Bordelon's partnership interest. "Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." LSA-C.C. art. 1796. Because there is no language of solidarity in the contract at issue, Smith and the corporation were not solidarily bound as principals.
However Smith also agreed to be a surety for the corporation,[2] and suretyship itself is a type of solidarity. Wooten v. Wimberly, 272 So.2d 303, 306 (La.1972). "Suretyship is an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." LSA-C.C. art. 3035. Obligors are solidary when each is liable for the whole, *792 and performance by one relieves the others of liability toward the obligee. LSA-C.C. art. 1794. To the extent that a surety, even a simple surety, is bound to pay the debt of the principal, the effect is that of being solidarily bound with the principal. Planiol explains:
Sureties resemble solidary co-debtors, in their relations with the principal debtor, and in their relations between themselves: there is no division between them, and each of them can be sued before the debtor. However this is not true solidarity, since the law accords to them the benefits of discussion and division, benefits which are the negation of solidarity and which are refused to real solidary creditors.
2 M. Planiol, Civil Law Treatise pt. 2, no. 2351 at 334 (11th ed. La.St.L.Inst. transl. 1959).
In the case of a surety who agrees to be bound in solido with the debtor, that obligation is regulated by the same principles as those for debtors in solido.[3] LSA-C.C. art. 3045. A simple surety, however, has the benefit of discussion, and, in the case of several sureties, division. Id. arts. 3046, 3049. Yet a simple surety may renounce either discussion or division or both in the surety agreement. Furthermore even if the surety has not renounced discussion or division, he waives them if he does not specifically plead them timely. LSA-C.C. arts. 3046-3051; LSA-C. C.P. arts. 5155, 5156, 926, 1005. As a simple surety, Smith had the benefit of discussion, but he waived it by his failure to raise it timely.[4]
The fact that a surety's obligation is to pay if the debtor does not does not evidence a suspensive condition, but merely the accessorial nature of the obligation. Planiol, no. 2338 at 341. Even in the case of simple suretyship, the creditor is under no obligation to sue the principal first. Slovenko, Suretyship, 39 Tul.L.Rev. 427, 449 (1965). He may sue the surety only, or he may join the surety and the principal in the same suit and get a judgment against both. Id. If, however, the surety has successfully pleaded discussion in a case where the principal is joined, the court may render judgment against both principal and surety but must order the creditor to execute first against the property discussed. LSA-C.C. art. 3051; LSA-C. C.P. art. 5156. In the instant case, because Smith waived discussion, he is in the same position as a solidary surety. He is bound for the entire debt of the principal, and he cannot force the creditor to execute first against the principal's property. The judgment was properly cast in solido.
This is not to say, however, that the agreement between the parties was a solidary suretyship. It most clearly was not, although once discussion was waived, the effect was the same. A judgment in solido against a principal and a surety is not equivalent to a holding that the suretyship was a solidary suretyship. The trial court *793 was correct in casting Smith and the corporation in judgment in solido.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] If the judgment in this case affects plaintiff's tax liability in any way, it is his responsibility to file amended returns to reflect the change.
[2] In the instant case the agreement states that both the corporation and Smith were sureties for the corporation. The very definition of suretyship, however, precludes the corporation being a surety for itself. Furthermore it would be redundant for a person to personally guarantee an obligation that he has already agreed to perform. Accordingly that provision of the contract is meaningless. See LSA-C.C. arts. 1971-1972.

It is quite common for a president of a corporation to personally guarantee an obligation of the corporation, and we believe that this was precisely what the parties intended in this case. Accordingly Smith was the only surety for the corporation.
[3] The Louisiana Supreme Court has even gone so far as to hold that a solidary surety is a principal, see Louisiana Bank and Trust Co. v. Boutte, 309 So.2d 274 (La.1975), but that decision has been uniformly criticized.
[4] Smith never raised the plea of discussion. He did, however, timely raise the plea of division. Yet Smith was the sole surety for the corporation, and therefore division, being applicable only in the case of more than one surety, see LSA-C.C. art. 3049, was inappropriate.

Although pleadings are to be construed liberally to do substantial justice, LSA-C.C.P. art. 865, we cannot construe plaintiff's plea of division to be one of discussion. Even if we were to assume that plaintiff actually meant to say discussion rather than division, a plea of discussion is incomplete without pointing out property of the primary debtor for seizure and advancing the costs attendant to the seizure. LSA-C.C. art. 3047; LSA-C.C.P. art. 5155.
In pleading discussion, the secondary obligor shall:
(1) Point out by a description sufficient to identify it, property in the state belonging to the primary obligor, or otherwise subject to discussion, which is not in litigation, is not exempt from seizure, is free of mortgages and privileges, and is worth more than the total amount of the judgment or mortgage; and
(2) Deposit into the registry of the court, for the use of the creditor, an amount sufficient to defray the costs of executing the judgment or enforcing the mortgage against the property discussed.
LSA-C.C.P. art. 5155.